1  JEFFREY F. KELLER (SBN 148005)
   jfkeller@kellergrover.com
2  ERIC A. GROVER (SBN 136080)
   eagrover@kellergrover.com
3  CAREY G. BEEN (SBN 240996)
4  cbeen@kellergrover.com
   **KELLER GROVER LLP**
5  1965 Market Street
   San Francisco, California 94103
6  Telephone:  (415) 543-1305
   Facsimile:   (415) 543-7861
7
8  Attorneys for Plaintiff
   G. TSANG, individually and on behalf of
9  classes of similarly situated individuals
10

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

FILED
2014 JAN 31 P 3: 13

11              **UNITED STATES DISTRICT COURT**          DMR

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14  G. TSANG, individually and on behalf of       **CV** No: **14    0493**
    classes of similarly situated individuals,
15                                                 CLASS ACTION
                    Plaintiffs,
16                                                 **COMPLAINT FOR DAMAGES**
             v.
17  LEXISNEXIS RISK SOLUTIONS INC.; and
    FIRST ADVANTAGE BACKGROUND
18  SERVICES, CORP.,
                                                   **DEMAND FOR JURY TRIAL**
19                  Defendants.

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

**CLASS ACTION COMPLAINT**

Plaintiff G. TSANG ("Plaintiff" or "Tsang"), on behalf of himself and a class (the "Class") of similarly situated individuals as defined below, alleges upon personal knowledge with respect to the acts he witnessed, and with respect to all other matters on information and belief, and the investigation of his counsel, as follows:

**INTRODUCTION**

1.     This class action lawsuit arises out of the ownership, operation, and unlawful use of the "Esteem" "retail theft contributory database" by defendants LexisNexis Risk Solutions Inc. ("LexisNexis") and First Advantage Background Services Corp. ("First Advantage"), and the unlawful use of Esteem consumer reports by retail merchant members of the Esteem database, all to the detriment of Plaintiff and the Class.    The Esteem database is a database comprised exclusively of information derived from the input of participating retail merchants, specifically their detention records for alleged incidents of shoplifting, fraud, and theft. The vast majority, if not all, of the detention records in the database relate to alleged crimes that were never criminally prosecuted and for which no criminal conviction ever resulted.   Defendant First Advantage purchased the Esteem database from defendant LexisNexis in early 2013.

2.     The intent and purpose of the Esteem database is to allow participating retail merchants the ability to exchange detention records relating to former employees and customers who have been accused of petty crimes for the purpose of making employment hiring decisions while avoiding the time, effort, expense and proof that would be required to pursue the criminal prosecution of such individuals.  Esteem database members use the existence of each other's detention records in the Esteem database as the basis for denying employment opportunities to individuals included in the database.  Doing so denies such individuals due process safeguards provided for in criminal prosecutions.

3.     While the database serves the convenience of retail merchants and has resulted in substantial profits for defendants LexisNexis and First Advantage, the database causes substantial unfair harm and injury to the individuals whose names are included in the database.  As a result of the inclusion of their names and information in the Esteem database, individuals face automatic

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

1  disqualification from employment opportunities without any due process of law for a period of
2  seven years. Such punishment in many cases lacks any proportionality to the individual's alleged
3  crime and far exceeds the effect that a criminal conviction for the alleged crime would have on an
4  individual's employment opportunities.

5      4.     In light of these unfair practices, it is not surprising that certain uses of information
6  contained in the database are highly prejudicial and harmful to the residents of the State of
7  California. LexisNexis's and First Advantage's inquiries into, and sharing of the database's
8  detention records with California employers, with the knowledge and intent that such information
9  will be used for the purpose of making employment hiring decisions, violates the Fair Credit
10  Reporting Act ("FCRA") 15 U.S.C. §§ 1681, *et seq.* More specifically, it violates the FCRA's
11  prohibitions on inquiring into and furnishing information to employers that would constitute a
12  violation of state equal employment opportunity laws or regulations if used by such employers, in
13  this case California Code of Regulations § 7287.4(d)(1).

14      5.     It is also illegal under California law for participating members of the Esteem
15  database to use certain information from the database for the purpose of making employment
16  hiring decisions. California Labor Code § 432.7 prohibits the use of the Esteem database's
17  detention records for the purpose of making employment hiring decisions because the detentions
18  identified in the Esteem database did not result in criminal convictions.

19      6.     As a result of Defendants' policies and practices, Plaintiff and Class members, as
20  defined below, are entitled to an award of statutory damages against LexisNexis and First
21  Advantage as set forth in 15 U.S.C. § 1681n.

22  **PARTIES, JURISDICTION AND VENUE**

23      7.     Plaintiff G. Tsang is an individual and a resident of a California county that is
24  within the San Francisco and Oakland division of this judicial district. Plaintiff's rights were
25  violated in the State of California and the violation of his rights arose out of his contact with
26  Defendants in or from this judicial district.

27      8.     Defendant LexisNexis Risk Solutions Inc. ("LexisNexis") is a Georgia corporation
28  headquartered in Atlanta, Georgia. This Court has personal jurisdiction over LexisNexis and

1  venue is proper because it has systematically and continuously done business in the state of

2  California and this judicial district by, among other things, providing consumer reports, including

3  consumer reports at issue in this litigation, to California employers.

4       9.     Defendant First Advantage Background Services Corp. ("First Advantage") is a

5  corporation headquartered and incorporated in the state of Florida. This Court has personal

6  jurisdiction over First Advantage and venue is proper because it has systematically and

7  continuously done business in the state of California and this judicial district by, among other

8  things, providing consumer reports, including consumer reports at issue in this litigation, to

9  California employers.

10       10.    "Defendants" means and refers to Defendants LexisNexis and First Advantage,

11  and each of them.

12       11.    This Court has subject matter jurisdiction over Plaintiff's and putative class and

13  subclass member claims as Plaintiff states claims arising under the Fair Credit Reporting Act, 15

14  U.S.C. § 1681. This Court also has federal diversity jurisdiction over this matter pursuant to the

15  Class Action Fairness Act, 28 U.S.C. § 1332(d).

16  **FACTUAL ALLEGATIONS RELATING TO PLAINTIFF**

17       12.    In 2010, Plaintiff G. Tsang was an employed at a big box retail store located in a

18  California county that is within the San Francisco and Oakland division of this judicial district.

19       13.    At the time of his employment in 2010, Plaintiff was aware that his then employer

20  conducted background checks on individuals that it was considering hiring for employment.

21  Plaintiff, however, was not aware that such background checks included inquiries into records

22  relating to allegedly criminal behavior that was never prosecuted and that did not result in

23  criminal convictions.

24       14.    On or around October 5, 2010, Plaintiff was confronted at work by a company loss

25  prevention officer and district manager for allegedly committing refund fraud. He was taken to

26  an office in the store where he was detained for questioning by the loss prevention officer and the

27  district manager.

28  / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

15.     While in the office with the loss prevention officer and the district manager, Plaintiff understood that he was not free to leave.   He was verbally informed that if he tried to leave the office without cooperating, he would be placed in handcuffs. The loss prevention officer asked Plaintiff a number of questions and informed Plaintiff that he needed to be very careful about how he answered the questions or else the police would be contacted, he would be placed under arrest, and he would be taken out of the office in handcuffs.

16.     While Plaintiff was being detained in the store office, the loss prevention officer directed Plaintiff to prepare and sign an admission statement relating to his then employer's allegations of refund fraud.  Plaintiff understood that if he did not cooperate by preparing and signing the admission statement, he would be turned over to the police for arrest and criminal prosecution. Accordingly, Plaintiff drafted and signed a statement admitting to the allegations.

17.     At the time of his detention, Plaintiff was not informed that his admission statement, or any other documents that were prepared during the detention, would be submitted to the Esteem database or any other database that could potentially affect his future employment with any employer other than his then employer.

18.     Upon signing his admission statement and other documents, Plaintiff was released from detention and his employment was terminated.  Plaintiff was never criminally charged with, or convicted of, the alleged refund fraud or which he was detained.

19.     In June 2012, Plaintiff applied online from his home located in a California county that is within the San Francisco and Oakland division of this judicial district for a position with Dollar General as a store manager at Dollar General's Stockton, California location.  As part of the online application, Plaintiff also agreed that Dollar General could perform a background check on him.  Thereafter, Plaintiff interviewed for, and was offered, a job with defendant Dollar General, pending the completion of the background check.

20.     As one component of the background check, Dollar General requested an Esteem consumer report on Plaintiff from LexisNexis. The Esteem consumer report contained information related to Plaintiff's October 2010 detention for alleged refund fraud, indicating that Plaintiff had provided his then employer with an "admission statement" related to the alleged

refund fraud on October 5, 2010. As a result of this information, Plaintiff was rated as having failed the Esteem background check.

21.    Because he failed the Esteem background check, Plaintiff was denied employment with Dollar General. He was told that he could reapply for a position with Dollar General once his information was no longer included in the Esteem database.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

22.    In California, retail merchants are granted a statutory right to make reasonable detentions of persons suspected of committing shoplifting or other acts of theft, pursuant to California Penal Code § 490.5. Subdivision (f)(1) of that section provides:

> A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises. . . .

23.    Penal Code § 490.5, enacted in 1976, codified a common law right given to merchants by California courts to detain shoplifting suspects for investigation. The intended purpose of the common law right to detain was to harmonize the individual's right to liberty with the store owner's right to protect his or her property. As explained by the International Association of Professional Security Consultants, detentions by retail merchants, including those allowed under California law, are for the purpose of "1. Confirming that stolen merchandise is possessed by the suspect, 2. Identifying the suspect, 3. Investigating the alleged theft, 4. Recovering stolen merchandise, and 5. Notifying the police of the offense."[1]

24.    Both the common law right to detain and the codified right to detain are substantially similar to the right to detain that is granted to police officers. Each is grounded in right to investigate a crime when there is probable cause to believe that a crime is being committed by a suspect. The fact of a detention, however, is not proof of a suspect's guilt and a detention is not an adjudication of guilt.

---

[1] See "Best Practice: Detention of Shoplifting Suspects By Loss Prevention and Security Personnel" at page 5, available at the internet at http://iapsc.org/?wpfb_dl=93.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

25.     Plaintiff's October 5, 2010 detention for alleged acts of refund fraud, as set forth above, is not out of the ordinary for the retail industry.  In fact, it is standard practice in the retail industry for store loss prevention officers to utilize their statutory and common law right to detain store employees or customers for investigation when they are suspected of having committed acts of theft, fraud, or shoplifting.

26.     Many retail merchants operating in California choose not to notify police of certain alleged acts of theft that they investigate during statutorily allowed shoplifting detentions.  Instead, many retail merchants use the detentions to, among other things, demand written "admission statements" from employees and customers which admit to the crimes for which they are being accused.

27.     As Plaintiff's detention demonstrates, individuals detained for shoplifting may provide written admission statements out of duress, coercion, or mistaken beliefs about the effects of providing written admission statements.  These factors are heightened by the fact that they have no access to legal counsel or legal protections during the detentions and may be given incomplete or even deceptive information about the effects of the admission statements.  In some cases, for example, store employees accused of theft may be led to believe that they can keep their jobs if they agree to provide, and do provide, written admission statements.  Individuals may also be led to believe that if they do not provide an admission statement they will be criminally prosecuted, regardless of whether the merchant has any intent of doing so.  Moreover, detained individuals may be led to believe that they are not free to leave the office until they have provided an admission statement for the crime of which they have been accused.  Further, they may be led to believe that an admission statement will only affect their employment, or ability to shop at, the particular retailer accusing them of theft, which may seem to them like a minor consequence of providing a statement but, as set forth below, is patently untrue.  In short, due to a plethora of

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES                6

1     factors, the admission statements obtained during merchant detentions may be highly

2     questionable and may not be knowing, voluntary, or even true or accurate.[2]

3          28.      After obtaining written admission statements of employees and customers accused

4     of misconduct, many merchants then send the admission statements and detention incident reports

5     to third party consumer reporting agencies for inclusion in what are essentially retail employment

6     blacklists. One such blacklist is the Esteem database, which was owned and operated by

7     defendant LexisNexis until sometime in early 2013, when it was sold to defendant First

8     Advantage.

9          29.      The Esteem database is a private database of information which LexisNexis and

10     First Advantage use, or have used, to provide consumer reports within the meaning of the FCRA

11     to employers for the purpose of making employment hiring decisions.

12          30.      The Esteem database is billed as a "Retail Theft Contributory Database" because it

13     is composed of numerous retailers' theft, fraud, and shoplifting detention records which have

14     been contributed to build the database. LexisNexis and First Advantage actively seek out these

15     detention records from the Esteem members to be able to promote and market the scope and

16     depth of the database for the use of its members.

17          31.      Generally, the Esteem database works as follows: First Advantage (or formerly

18     LexisNexis) sells "memberships" to retail employers. As part of the membership agreement, First

19     Advantage (or formerly LexisNexis) requires that each member agree to contribute internal

20     shoplifting records from their stores to First Advantage (or formerly LexisNexis) for inclusion in

21     the database. These records are composed of incident reports prepared at the time individuals are

22     detained for suspected theft or shoplifting and are accompanied by either signed "admission

23     statements" obtained during the detentions, as described above, or evidence of referral of the

24

25     [2] In criminal law, judicial concern over the numerous reasons why an individual might provide a false or inaccurate confession statement relating to an alleged crime, and the recognition that uncritical acceptance of confessions might lead to unjust criminal convictions, has led to the

26     *corpus delicti* rule. As stated in California Jury Instruction - Criminal No. 2.72, the *corpus delicti* rule provides that: "[n]o person may be convicted of a criminal offense unless there is some proof

27     of each element of the crime independent of any [confession] [or] [admission] made by [him] [her] outside of [] trial."

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

1   incidents for criminal legal action.  After members contribute new records to the database, the

2   operator of the Esteem database (currently First Advantage and formerly LexisNexis) creates

3   entries in the Esteem database for the records.  Thereafter, any Esteem consumer report relating to

4   an individual who is the subject of one of the records which a member requests, will include

5   information from records submitted by one or more other members.

6        32.     Although each retail member submits incident reports and admission statements

7   for inclusion in the Esteem database to First Advantage (or formerly LexisNexis), the incident

8   reports and admission statements themselves are not typically shared with other database

9   members.  Rather, when a member requests an Esteem consumer report from First Advantage (or

10  formerly LexisNexis), First Advantage (or formerly LexisNexis) will run an inquiry in the Esteem

11  database on the individual for whom a consumer report is sought.  If the individual is in the

12  database, First Advantage (or formerly LexisNexis) will prepare a consumer report for the

13  requesting member that is akin to a rap sheet containing only the following pieces of information:

14  identifying information for the individual, location details for the alleged theft, and "theft incident

15  details" which include notations for "Admission Status," "Legal Action," "Incident [type],"

16  "Type of Offense," "Incident Date," and "Theft Amount."  Thus, Esteem members submit their

17  own detention records and, as a benefit of membership, receive consumer reports incorporating

18  the detention records of other members.

19       33.     The line for "Admission Status" in an Esteem consumer report states only whether

20  the operator of the Esteem database is in possession of an admission statement.  Neither First

21  Advantage nor LexisNexis makes any examination or determination as to whether admission

22  statements are true or accurate.  Nor do Defendants make any independent decision as to whether

23  the admission statement even truly admits to any alleged act of theft or shoplifting.  Rather, when

24  a member seeks an Esteem consumer report regarding a prospective employee, First Advantage

25  (and formerly LexisNexis) simply verifies that it is in possession of a so-called admission

26  statement contributed to the database by another member.

27       34.     The line for "Legal Action" indicates whether any type of legal action has been

28  taken against the subject of the report in connection with the reported incident.  The line for

COMPLAINT FOR DAMAGES         8

"Legal Action" will typically be blank, as no legal action has been taken against the vast majority of individuals contained in the database. Esteem database members have no incentive to take the time, effort, expense and development of proof necessary to criminally prosecute individuals they accuse of theft or fraud. Instead, Esteem members use the existence of other members' detention records in the Esteem database as an equivalent to legal action for purposes of hiring decisions even though their secret process strips accused employees and consumers of due process safeguards provided in legal actions.

35.     In fact, LexisNexis and First Advantage have maintained a direct interest in ensuring that the alleged crimes contained in the Esteem database are not criminally prosecuted. The selling point of the Esteem database is that it contains information that only LexisNexis and First Advantage have related to unprosecuted crimes. As explained by LexisNexis in promotional material, "[s]ince many internal theft incidents are not prosecuted, LexisNexis Retail Theft Contributory Database provides [] organization[s] with access to proprietary theft and fraud data that may not be available anywhere else."

36.     The line for "Incident [type]" in an Esteem consumer report identifies whether the alleged incident of theft was committed internally, i.e. by an employee of the reporting member, or externally, i.e. by a non-employee such as a shoplifter.

37.     The line for "Incident Date" in an Esteem consumer report provides the date on which the subject of the report was detained for the alleged criminal act.

38.     Finally, the line for "Theft Amount" in an Esteem consumer report typically indicates the amount the retailer alleges has been stolen from them by the subject of the Esteem report, and is not an amount for which the subject of the report has been found liable in a court of law.

39.     In light of the fact that Esteem reports are based on records from detentions that in no way constitute actual adjudications of guilt, Esteem consumer reports themselves are nothing more than detention records for alleged crimes that did not result in criminal convictions.

40.     Members of the Esteem database use the Esteem consumer reports that they obtain from LexisNexis or First Advantage for the purpose of making employment hiring decisions.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

COMPLAINT FOR DAMAGES                                                 9

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

41.     LexisNexis and First Advantage are aware that Esteem database members use the Esteem consumer reports LexisNexis and First Advantage create in making employment hiring decisions.  Indeed, the very purpose of the Esteem database is to provide members with these consumer reports that will be used for making hiring decisions.  Thus, the actions of LexisNexis and First Advantage in inquiring into and providing information contained in the Esteem database to members for the purpose of making employment hiring decisions is intentional, voluntary, and willful.

42.     Esteem consumer reports are extremely damaging to the individuals identified in the reports.  Once an entry has been made in the Esteem database relating to a particular incident and individual, the entry remains in the database for a period of at least seven years and is almost universally treated by the database members as conclusive proof that the individual is unfit to hire.  If an individual's name and record of detention appear in the database, he or she will, in almost every case, automatically be denied employment by each member of the database.  The database members include most major retailers in the United States. Thus, individuals identified in the Esteem database who are not experienced in other professions are deprived of their livelihoods by inclusion in the database without ever suffering a criminal conviction for their alleged wrongdoing and without ever being afforded the protections of due process of law.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action under Rule 23, Federal Rules of Civil Procedure, against defendants LexisNexis and First Advantage on behalf of himself and the following defined Class:

> All persons who within the two years preceding the filing of this action and during its pendency applied for employment in the state of California and who were the subject of an Esteem consumer report relating to such application for employment which contains incident details for a theft or other alleged crime which did not result in a criminal conviction.

44.     The Class Plaintiff seeks to represent contain numerous members and are clearly ascertainable including, without limitation, by using the Defendants' records to determine the size of the Class and Subclass and to determine the identities of individual Class members. Plaintiff

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

1   reserves the right to amend or modify the Class definition or to add subclasses or limitations to

2   particular issues.

3       45.     By their unlawful actions, defendants LexisNexis and First Advantage have

4   violated the rights of Plaintiff and the Class under the Fair Credit Reporting Act, 15 U.S.C.

5   §§ 1681, *et seq.*  The questions raised are, therefore, of common or general interest to the Class

6   members each of whom has a well-defined community of interest in the questions of law and fact

7   raised in this action.

8       46.     Plaintiff's claims are typical of those of the Class, as Plaintiff now suffers as a

9   result of the same violations of the law as other putative Class members.  Plaintiff has retained

10  counsel with substantial experience in prosecuting complex litigation and class actions to

11  represent him and the Class, and Plaintiff will fairly and adequately represent the interests of the

12  Class.

13      47.     This action may properly be maintained as a class action under Rule 23, Federal

14  Rules of Civil Procedure, because the Class is too numerous for joinder, Plaintiff's claims are

15  typical of those of the Class, common questions of law and fact predominate, Plaintiff and his

16  counsel can adequately represent the Class, and a class action is superior to other methods of

17  adjudication.

18                                    **NUMEROSITY**

19      48.     In light of the fact that the Esteem database contains hundreds of thousands of

20  records related to employers who employ, at a minimum, tens of thousands of California

21  employees, the size of the Class is sufficiently numerous to make joinder of individual cases

22  impracticable.

23                                    **TYPICALITY**

24      49.     Plaintiff's claims are typical of the claims of all of the other members of the Class.

25  Plaintiff's claims and the claims of the Class are based on the same legal theories and arise from

26  the same unlawful conduct, resulting in the same injury to Plaintiff and to all of the other Class

27  members.

28  / / /

---

COMPLAINT FOR DAMAGES                              11

**COMMON QUESTIONS OF LAW AND FACT**

50.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

a.      Whether Esteem consumer reports constitute detention records within the meaning of Labor Code § 432.7 and California Code of Regulations § 7287.4;

b.      Whether the inquiries of defendants LexisNexis and First Advantage on behalf of California employers into detention records contained in the Esteem database constitute inquiries that would violate a California equal employment opportunity regulation if made by the employers directly;

c.      Whether records contained in the Esteem database include acts of theft or other crimes that did not result in criminal convictions; and

d.      Whether Class members are entitled to statutory damages for each violation of the FCRA;

**ADEQUACY**

51.     Plaintiff will fairly and adequately represent and protect the interests of the other Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions and the financial resources to litigate this class action. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class. Neither Plaintiff nor his counsel has any interests adverse to those of the other Class members.

**SUPERIORITY**

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. In order for each individual to prosecute his or her own claims against Defendants, he or she would have to disclose his or her inclusion in the Esteem database. Doing so would result in the very same injury that this lawsuit seeks to rectify: disclosure of information related to a criminal detention that did not result in a criminal conviction in a permanent record that could be used for the purpose of making employment determinations.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

1    53.    A class action is also superior to other available methods for the fair and efficient

2    adjudication of this controversy because individual litigation of the claims of all Class members is

3    impracticable and questions of law and fact common to the Class predominate over any questions

4    affecting only individual members of the Class.  Even if every individual Class member could

5    afford individual litigation, the court system could not.  It would be unduly burdensome to the

6    courts if individual litigation of the numerous cases were to be required.  Individualized litigation

7    also would present the potential for varying, inconsistent, or contradictory judgments and would

8    magnify the delay and expense to all parties and to the court system resulting from multiple trials

9    of the same factual issues.  By contrast, the conduct of this action as a class action with respect to

10   some or all of the issues will present fewer management difficulties, conserve the resources of the

11   court system and the parties and protect the rights of each Class member.  Further, it will prevent

12   the very real harm that would be suffered by numerous putative Class members who simply will

13   be unable to enforce individual claims of this size on their own.  Plaintiff anticipates no difficulty

14   in the management of this case as a class action.

15   54.    The prosecution of separate actions by individual Class members may create a risk

16   of adjudications with respect to them that would, as a practical matter, be dispositive of the

17   interests of other Class members not parties to those adjudications or that would substantially

18   impair or impede the ability of those non-party Class members to protect their interests.

19   55.    The prosecution of individual actions by Class members would establish

20   inconsistent standards of conduct for Defendants.

## FIRST CAUSE OF ACTION

### (Violation of the Fair Credit Reporting Act (15 U.S.C. §§ 1681, *et seq.*))

23   56.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and

24   further alleges as follows.

25   57.    Plaintiff and Class members are "consumers," as defined in 15 U.S.C. § 1681a(c).

26   58.    Consumer reports derived from the Esteem Retail Theft Contributory Database, as

27   set forth above, are "consumer reports" as defined in 15 U.S.C. § 1681a(d).

28   / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

59.     Defendant LexisNexis is a "consumer reporting agency" within the meaning of the 15 U.S.C. § 1681a(f).

60.     Defendant First Advantage is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

61.     The FCRA, at 15 U.S.C. § 1681d(d)(2), contains the following prohibition: "a consumer reporting agency shall not make an inquiry for the purpose of preparing an investigative consumer report on a consumer for employment purposes if the making of the inquiry by an employer or prospective employer of the consumer would violate any applicable Federal or State equal employment opportunity law or regulation."

62.     California Code of Regulations § 7287.4 is an equal employment regulation. It states: [e]xcept as otherwise provided by law (e.g., 12 U.S.C. 1829; Labor Code Section 432.7), it is unlawful for an employer or other covered entity to inquire or seek information regarding any applicant concerning: (A) Any arrest or detention which did not result in conviction. . . . "

63.     California Labor Code § 432.7 is an equal employment opportunity law. It states, in part, that "[n]o employer, whether a public agency or private individual or corporation, shall ask an applicant for employment to disclose, through any written form or verbally, information concerning an arrest or detention that did not result in conviction . . . nor shall any employer seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, any record of arrest or detention that did not result in conviction..." Cal. Lab. Code § 432.7(a)

64.     Under both California Code of Regulations § 7287.4 and California Labor Code § 432.7(a), California employers are prohibited from seeking or inquiring into arrest or detention records relating to prospective employees that did not result in criminal convictions. Because California employers are prohibited from making such inquiries, defendants LexisNexis and First Advantage are also prohibited from making such inquiries under 15 U.S.C. § 1681d(d)(2).

65.     Under California law, merchants are granted the right to detain suspected shoplifters pursuant to common law and California Penal Code § 490.5.

COMPLAINT FOR DAMAGES                                    14

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

66. Each "incident report" and "admission statement" on which Esteem consumer reports are based were obtained during and as part of detentions within the meaning of California common law and Penal Code § 490.5. Many, if not all, of the detentions did not result in criminal convictions. Accordingly, employers are prohibited under California Code of Regulations § 7287.4 and Labor Code § 432.7 from inquiring about or seeking the information contained in Esteem consumer reports relating to prospective employees because such information constitutes information regarding detentions that did not result in a conviction.

67. Because employers are prohibited from inquiring into information regarding detentions that did not result in a conviction contained in the Esteem database under California state equal employment opportunity law and regulation, defendants LexisNexis and First Advantage are also prohibited from inquiring into such information under 15 U.S.C. § 1681d(d)(2).

68. Defendants LexisNexis and First Advantage have inquired into detention records that did not result in criminal convictions in violation of the FCRA by soliciting membership in the Esteem database and including in the membership contracts a duty on the part of members to provide LexisNexis or First Advantage with internal detention records that did not result in criminal convictions. Defendants LexisNexis and First Advantage have also violated the FCRA by inquiring into the detention records contained in the Esteem database for the purpose of preparing investigative consumer reports for employment purposes when the making of the same inquiry by Esteem database members in California would violate state equal employment opportunity law and regulation, i.e. California Code of Regulations § 7287.4 and Labor Code § 432.7.

69. Despite the fact that defendants LexisNexis and First Advantage are prohibited from inquiring into information contained in the Esteem database for the purpose of preparing consumer reports for California employment purposes, they have voluntarily, intentionally, and willfully made such inquiries and defendant First Advantage continues to voluntarily, intentionally, and willfully make such inquiries.

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

70.     Plaintiffs and members of the Class are entitled to statutory damages of not less than $100 and not more than $1,000 and punitive damages, and reasonable attorneys' fees and costs pursuant to § 616 of the FCRA (15 U.S.C. § 1681n) for each unlawful inquiry into their records contained in the Esteem database that defendants LexisNexis and First Advantage have performed for the purpose of preparing California employment related consumer reports.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

a.     An order certifying the Class and appointing Plaintiff G. Tsang as representative of the Class Keller Grover LLP as lead counsel for the Class;

b.     An order that the actions of defendants LexisNexis and First Advantage violate the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*;

c.     A judgment for and award of statutory damages to Plaintiff and the members of the Class pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681n;

d.     Payment of costs of the suit;

e.     Payment of attorneys' fees under the Fair Credit Reporting Act, 15 U.S.C. § 1681n;

f.     An award of pre- and post-judgment interest to the extent allowed by law; and

g.     For such other or further relief as the Court may deem just and proper.

Dated: January 31, 2014                    Respectfully submitted,

                                           **KELLER GROVER LLP**

                                           By: _____
                                                JEFFREY F. KELLER

                                           Attorneys for Plaintiff G. TSANG, individually and
                                           on behalf of classes of similarly situated individuals

COMPLAINT FOR DAMAGES                      16

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated:  January 31, 2014

Respectfully submitted,

**KELLER GROVER LLP**

By: _____
JEFFREY F. KELLER

Attorneys for Plaintiff G. TSANG, individually and
on behalf of classes of similarly situated individuals

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

COMPLAINT FOR DAMAGES                 17