Linda S. Husar (SBN 93989)
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Philip J. Smith (SBN 232462)
psmith@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone:+1 415 543 8700
Facsimile:      +1 415 391 8269

Mark S. Melodia (*admitted Pro Hac Vice*)
Diane A. Bettino (*admitted Pro Hac Vice*)_
Paul J. Bond (*admitted Pro Hac Vice*)
REED SMITH LLP
136 Main Street - Suite 250
Princeton, NJ 08540-7839
Telephone: +1 609 987 0050
Facsimile: +1 609 951 0824

Attorneys for Defendant
LEXISNEXIS RISK SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| G. TSANG, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>LEXISNEXIS RISK SOLUTIONS INC.; and FIRST ADVANTAGE BACKGROUND SERVICES, CORP.,<br><br>Defendants. | No.: CV 14-00493 YGR<br><br>**DEFENDANT LEXISNEXIS RISK SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Judge:      Hon. Yvone Gonzalez Rogers<br>Courtroom:  Courtroom 1 - 4th Floor<br>Date:       July 29, 2014<br>Time:       2:00 pm<br><br>Complaint Filed: January 31, 2014 |

# Table of Contents

Page

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

    I.    INTRODUCTION ............................................................................................. 1

    II.    RELEVANT FACTS ALLEGED IN THE COMPLAINT ............................... 3

    III.    LEGAL ANALYSIS .......................................................................................... 5

        A.    Legal Standards ..................................................................................... 5

        B.    If Dollar General Had Made The Supposed Inquiries, Such Inquiries Would Not Have Violated California Law; Therefore, Plaintiff's Entire Complaint Must Be Dismissed ................. 6

        C.    Plaintiff Fails To Allege Facts Of Any Violation of 15 U.S.C. § 1681d(d)(2) ....................................................................................... 9

        D.    Plaintiff Fails To Allege Facts Upon Which LexisNexis Would Have Reasonable Grounds To Believe Dollar General Had An Improper Purpose For The Esteem Report ............................. 11

        E.    Plaintiff Has Not Alleged Facts To Support A Willful Violation of the FCRA...................................................................... 12

    IV.    CONCLUSION ............................................................................................... 14

# Table of Authorities

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) .................................................................................................. 6

*Ashby v. Farmers Ins. Co. of Oregon*,
  565 F. Supp. 2d 1188 (D. Or. 2008) ........................................................................................ 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 5, 6

*Belshaw v. Credit Bureau of Prescott*,
  392 F. Supp. 1356 (D. Ariz. 1975) .......................................................................................... 10

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) .................................................................................................. 11

*Cisneros v. U.D. Registry, Inc.*,
  39 Cal. App. 4th 548, 46 Cal. Rptr. 2d 233 (1995) .............................................................. 2, 11

*Grigsby v. Valve Corp.*,
  2012 U.S. Dist. LEXIS 179096 (W.D. Wash. Nov. 14, 2012) ................................................. 6

*Johnson v. Riverside Healthcare Sys.*,
  534 F.3d 1116 (9th Cir. 2008) .................................................................................................. 5

*Levine v. World Fin. Network Nat'l Bank*,
  554 F.3d 1314 (11th Cir. Ga. 2009) .................................................................................. 14, 15

*Ley v. Boron Oil Co.*,
  419 F. Supp. 1240 (W.D. Pa. 1976) ........................................................................................ 10

*Long v. Tommy Hilfiger U.S.A., Inc.*,
  670 F.3d 371 (3rd Cir. 2012) .................................................................................................. 15

*Moreland v. CoreLogic SafeRent LLC*,
  2013 U.S. Dist. LEXIS 157302 (C.D. Cal. Oct., 25, 2013) .................................................... 13

*People v. Zelinski*,
  24 Cal. 3d 357 (Cal. 1979) ....................................................................................................... 8

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ............................................................................................................ 13, 14

*Washington v. CSC Credit Servs., Inc.*,
  199 F.3d 263 (5th Cir. 2000) .................................................................................................. 13

**Statutes**

15 U.S.C. § 1681 ............................................................................................................................ 2

15 U.S.C. § 1681a ........................................................................................................................ 12

15 U.S.C. § 1681b(1)(A)(ii) ................................................................................................ 3, 8, 14

15 U.S.C. § 1681d(d)(2) ...................................................................................................... 2, 8, 11

15 U.S.C. § 1681e ........................................................................................................................ 15

15 U.S.C. § 1681e(a) .............................................................................................................. passim

15 U.S.C. § 1681n ................................................................................................................. 16, 18

15 U.S.C.A. § 1681n .................................................................................................................... 16

Cal. Labor Code § 432.7 ............................................................................................................... 8

Cal. Labor Code § 432.7(a) ........................................................................................................... 2

Cal. Penal Code § 490.5 ..................................................................................................... 2, 9, 10

Cal. Penal Code § 490.5 (f)(1) ....................................................................................................... 9

Cal. Penal Code § 490.5 (f)(2) ....................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 5, 15

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 5

**Regulations**

2 C.C.R. § 11017(a) ...................................................................................................................... 9

2 C.C.R. § 11017(d)(1) ................................................................................................................. 8

2 C.C.R. § 11017(d)(1)(A) ........................................................................................................ 2, 8

**Other Authorities**

Equal Employment Opportunity Commission, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964* (2012) ................................................................................................. 7

Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations at 27, Comment 603(e)-3.A (July 2011) ................................................................................................................................... 10

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 29, 2014 at 2:00 pm, or as soon thereafter as this matter may be heard in the above-entitled Court, located at 1301 Clay Street, Oakland, California, 94612, Defendant LEXISNEXIS RISK SOLUTIONS, INC. ("Defendant" or "LexisNexis") will, and hereby does, move for dismissal of Plaintiff G. TSANG's ("Plaintiff" or "Tsang") Amended Complaint ("Complaint") as to LexisNexis.

This motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on the grounds that Plaintiff has failed to state a claim against LexisNexis under which relief may be granted. This motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities included herein, the Proposed Order, all pleadings and papers on file in this action, and such other argument and evidence as may be presented to the Court prior to or at the hearing on this matter.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff contends that LexisNexis and First Advantage Background Services Corp. ("First Advantage") owned and operated a "retail theft contributory database". According to Plaintiff, "[t]he Esteem database is a database comprised exclusively of information derived from the input of participating retail merchants, specifically their detention records for alleged incidents of shoplifting, fraud, and theft." *Complaint*, ¶1. As set forth in more detail below, Plaintiff contends that in 2010 his former employer "detained" Plaintiff under suspicion of refund fraud; that Plaintiff signed an admission of theft; that this admission of theft was submitted to the Esteem database; and that when Plaintiff sought a new job in 2012 with Dollar General, his prospective employer asked for and received a report from the Esteem database. As a result of the information contained in such report, Dollar General did not offer Plaintiff employment. (Plaintiff has not sued Dollar General in this action).

While Plaintiff asserts only federal law claims, addressed below, each federal law claim rests on a predicate assertion of state law. Plaintiff completely misunderstands the state law upon which

his case rests.  Plaintiff claims that for Dollar General to ask Plaintiff's prior employer about the in-store interview would have violated California law.  Plaintiff cites to 2 C.C.R. Section 11017 (d)(1)(A), which provides that, with certain exceptions: "it is unlawful for an employer or other covered entity to inquire or seek information regarding any applicant concerning…Any arrest or detention that did not result in conviction."  *Accord*, California Labor Code § 432.7(a).  But Plaintiff does not allege he was arrested.  LexisNexis has not identified any instance in which 2 C.C.R. Section 11017 (d)(1)(A) or California Labor Code § 432.7(a) has ever been construed to apply to "detentions" by merchants, as opposed to detentions by officers of the law.  Nor does the "merchant detention" statute to which Plaintiff cites, California Penal Code § 490.5, even apply on the facts as alleged.  Merchant detention as set forth in California law only comes into play when a merchant is trying to keep a thief from walking off with merchandise.  Plaintiff alleges he was suspected of refund fraud, not trying to walk off with merchandise.  Plaintiff not only fails to allege a detention by criminal authorities, he fails to allege any detention under California law.

Plaintiff's failures to allege a state law violation doom his federal law claims. Plaintiff brings this action under two inapplicable subsections of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").  Plaintiff first alleges that Defendants violated 15 U.S.C. § 1681d(d)(2).  This subsection of the FCRA bars consumer reporting agencies from conducting personal interviews to obtain information that, under equal employment law, an employer could not obtain directly.  As noted, California law would not have barred Dollar General from obtaining the information at issue directly from Plaintiff's prior employer.  In addition, Plaintiff does not allege that LexisNexis conducted any personal interview with any third party, such as would trigger application of this FCRA subsection.   Simply operating a contributory database for multiple companies is not the same as conducting personal interviews.  *See*, *e.g*., *Cisneros v. U.D. Registry, Inc*., 39 Cal. App. 4th 548, 569, 46 Cal. Rptr. 2d 233, 247 (1995)(finding no "personal interview" where a database company simply accepted landlord responses to mailed surveys about tenants, for later use by other prospective landlords).

Plaintiff's second count alleges violation of 15 U.S.C. § 1681b(1)(A)(ii) and 15 U.S.C. § 1681e(a).  Section 1681b(1)(A)(ii) requires a consumer reporting agency, before providing a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

consumer report for employment purposes, to obtain a certification from the user.  The user must certify to the consumer reporting agency that information from the report will not be used in violation of any equal employment law or regulation.  Plaintiff does not deny that LexisNexis obtained all needed certifications.  However, per Plaintiff, LexisNexis "had reasonable grounds for believing Esteem consumer reports would be used by California employers for a purpose not permitted" under California law.  *Complaint*, ¶91.  Plaintiff is wrong on the law.  Dollar General would have been entitled to ask Plaintiff's former employer directly about the events in question.  Further, because he is wrong on the law, Plaintiff does not state any facts that would have put LexisNexis on reasonable notice of any alleged improper use of the reports.

Lastly, Plaintiff states no actual damages, and makes no demand for them.  He demands only statutory damages and attorneys' fees, which cannot be recovered under the FCRA without a showing of a willful violation of the law.  Plaintiff has not alleged facts to support any willful violation.  There is no reported decision where any court has read California law as Plaintiff would, i.e. to bar potential employers from inquiring into an applicant's merchant detentions.  Even if Plaintiff were right in his reading of law, Plaintiff fails to plead facts that would support a finding of willfulness and his entitlement to any recovery.

## II.     RELEVANT FACTS ALLEGED IN THE COMPLAINT

Plaintiff alleges that in 2010 he was employed by an unidentified retailer in California.  *Complaint*, ¶12.  "On or around October 5, 2010, Plaintiff was confronted at work by a company loss prevention officer and district manager for allegedly committing refund fraud."  *Complaint*, ¶14.  "While Plaintiff was being detained in the store office, the loss prevention officer directed Plaintiff to prepare and sign an admission statement relating to his then employer's allegations of refund fraud."  *Complaint*, ¶16.  While Plaintiff characterizes this as a "detention," he does not allege that he asked to leave, attempted to leave, or wanted to leave, much less that his employer used any force to prevent him from leaving.  Plaintiff does not allege that any police or other law enforcement official was contacted or involved.  Plaintiff asserts that "[u]pon signing his admission statement and other documents, Plaintiff was released from detention and his employment was terminated."  *Complaint*, ¶18.

In June 2012, Plaintiff applied for another job, this one with retailer Dollar General. *Complaint*, ¶19. "Plaintiff interviewed for, and was offered, a job with Dollar General, pending the completion of the background check. As one component of the background check, Dollar General requested an Esteem consumer report on Plaintiff from LexisNexis." *Complaint*, ¶¶19-20. The background report ordered by Dollar General in 2012 "contained information related to Plaintiff's October 2010 detention for alleged refund fraud."

Plaintiff does not allege that the background report indicated that he had been detained. As noted above, Plaintiff does not allege that his employer so much as touched him, much less used force to prevent him from leaving. In fact, per Plaintiff: Complaint, ¶20.

> If the individual is in the database, First Advantage (or formerly LexisNexis) will prepare a consumer report for the requesting member that is akin to a rap sheet containing *only* the following pieces of information: identifying information for the individual, location details for the alleged theft, and "theft incident details" which include notations for "Admission Status," "Legal Action," "Incident [type]," "Type of Offense," "Incident Date," and "Theft Amount."

*Complaint*, ¶33 (emphasis added).

As to each of these pieces of information, according to Plaintiff:

- The line for "Admission Status" in an Esteem consumer report states only whether the operator of the Esteem database is in possession of an admission statement. *Complaint*, ¶34;
- The line for "Legal Action" indicates whether any type of legal action was taken against the subject of the report in connection with the reported incident…. "Legal Action" will typically be blank… *Complaint*, ¶35;
- The line for "Incident [type]" in an Esteem consumer report identifies whether the alleged incident of theft was committed internally, i.e. by an employee of the reporting member, or externally, i.e. by a non-employee such as a shoplifter. *Complaint*, ¶37;
- The line for "Incident Date" in an Esteem consumer report provides the date

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

on which the subject of the report was detained for the alleged criminal act. *Complaint*, ¶38;

- Finally, the line for "Theft Amount" in an Esteem consumer report typically indicates the amount the retailer alleges was stolen from them by the subject of the Esteem report. *Complaint*, ¶39.

Hence, none of the information described by Plaintiff as the "only pieces of information" provided in the report actually indicate whether an individual was detained.[1]

### III. LEGAL ANALYSIS

#### A. Legal Standards

Pursuant to FRCP 8(a)(2), a pleading "must contain [a] statement of the claim showing that the pleader is entitled to relief." Under FRCP 12(b)(6), a cause of action is subject to dismissal for failure to state a claim upon which relief can be granted. "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully [and w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' *Id.* (*quoting Twombly*, 550 U.S. at 556-57). Something beyond "the mere possibility" of a claim must be alleged "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, *supra*.

---

[1] Plaintiff includes an Exhibit A to the Complaint, claiming that it is a sample Esteem incident report. This report relates neither to Plaintiff nor to anyone in the putative class of California job-seekers. The report concerns a Keesha Goode of Philadelphia, Pennsylvania concerning a Philadelphia job.

[2] For purposes of this motion only and as it must, LexisNexis accepts the allegations in the Amended Complaint as true. LexisNexis reserves all arguments and issues concerning those allegations.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, supra,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 556).  In contrast, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and a court is not "bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id*; *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

The animating principles behind the Supreme Court's most recent statements on pleading requirements apply with special force in the class action context.  The Supreme Court noted in *Twombly* that "discovery accounts for as much as 90 percent of litigation costs when discovery is actively employed," and that the class action before it "obviously" posed the risk of large potential expense if not carefully scrutinized. *Twombly*, *supra*, 550 U.S. at 559 (quotation marks and citations omitted).  "A complex, large-scale case such as a class action should naturally have a higher plausibility threshold than a simpler case… certain cases merit a higher plausibility threshold." *Grigsby v. Valve Corp.*, 2012 U.S. Dist. LEXIS 179096 at *10 (W.D. Wash. Nov. 14, 2012) (citing to *Twombly*).

### B. If Dollar General Had Made The Supposed Inquiries, Such Inquiries Would Not Have Violated California Law; Therefore, Plaintiff's Entire Complaint Must Be Dismissed

In Count One, Plaintiff alleges that LexisNexis violated the FCRA's prohibition on making any inquiry, which if made "by an employer or prospective employer of the consumer would violate any applicable Federal or State equal employment opportunity law or regulation."  15 U.S.C. § 1681d(d)(2).  In Count Two, Plaintiff alleges that LexisNexis had reasonable grounds to disregard any certification that "information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation."  15 U.S.C. § 1681b(1)(A)(ii).  Both assertions fail for many independently sufficient reasons, among them that nothing in California law prohibits a potential employer from asking previous employers about merchant detentions.

Plaintiff relies upon California statutory employment law and regulations – California Code of Regulations, Title 2, Section 11017(d)(1) and California Labor Code Section 432.7 – to try to support his claim that LexisNexis made unlawful inquiries. *Complaint*, ¶¶ 56-70. California law prohibits employers from inquiring into an individual's record of "arrest or detention that did not result in conviction". 2 C.C.R. § 11017(d)(1)(A). Plaintiff does not allege he was arrested or detained by any criminal authority.

California law prohibits the reporting of detentions by *criminal* authorities where those do not lead to arrests. The relevant section of 2 C.C.R. § 11017(d)(1)(A) is under the subheading "Criminal Records". This section of the law as a whole cites to and incorporates the "Uniform Guidelines on Employee Selection Procedures promulgated by various federal agencies, including the EEOC and Department of Labor." 2 C.C.R. § 11017(a). Those Uniform Guidelines set forth specific tests to determine whether a practice has a discriminatory impact. The federal government and California have determined that inquiry into criminal arrests and criminal detentions, without criminal convictions, has such discriminatory impact. *See, e.g.,* Equal Employment Opportunity Commission, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964* (2012)(stating "[t]he Commission intends this document for use by employers considering the use of *criminal* records in their selection and retention processes; by individuals who suspect that they have been denied jobs or promotions, or have been discharged because of their *criminal* records; and by EEOC staff who are investigating discrimination charges involving the use of <u>criminal</u> records in employment decisions.")(emphasis added). Because Plaintiff does not allege any arrest or detention by criminal authorities, he does not allege any arrest or detention which is protected from later reporting by California law.

The merchant detention statute to which Plaintiff cites, California Penal Code § 490.5, provides that a merchant may "detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises." Cal. Pen. Code § 490.5 (f)(1). In so doing, a merchant "may use a reasonable

amount of non-deadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property." Cal. Pen. Code § 490.5 (f)(2). Plaintiff does not allege that his former employer suspected him of taking merchandise, as is required for the statute to apply. Instead, Plaintiff alleges that his former employer believed he committed "refund fraud". *Complaint*, ¶ 14. Since Plaintiff does not allege he was held to protect any merchandise, he was not even "detained" within the meaning of this statute.

But even if Plaintiff's former employer were operating under California Penal Code § 490.5, such a detention does not compare to a detention by criminal authorities and the corresponding stigma of such criminal detention. As the California Supreme Court found:

> when a merchant exercises his common law privilege (now embodied in Pen. Code, § 490.5), to detain a person suspected of taking merchandise, the merchant is exercising a purely private and self-interested right to protect his property. His conduct does not assume the color of law until he formally arrests the suspected thief, as any citizen is empowered to do (Pen. Code, § 837), or, alternatively, continues the detention for delivery of the suspect to a peace officer who may arrest. Detention and search of a shoplifter, followed by release by the merchant, brings into play no state interest that concerns us here.

*People v. Zelinski*, 24 Cal. 3d 357, 368 n. 10 (Cal. 1979). Detention by criminal authorities implies that a trained, sworn law officer believed he or she had probable cause to believe that the individual had broken the law. Detention by anyone else, including a merchant, cannot be engrafted onto the California provisions that Plaintiff cites. Blurring the line between purely private actions and those official actions taken with the imprimatur of the State – as this Court would be forced to do if accepting Plaintiff's argument – would be a dangerous precedent with negative potential consequences. Every time an employer questions an employee in connection with poor performance or suspected misconduct, that employer would be faced with a threat of the discussion being recharacterized as a criminal detention, subject to all the restrictions of law.

Based upon the foregoing, Plaintiff's Complaint fails to allege facts sufficient to create a reasonable inference that LexisNexis unlawfully inquired into Plaintiff's arrest or criminal detention

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

records in violation of California law.  Therefore, on this ground alone, the Complaint should be dismissed.

### C. Plaintiff Fails To Allege Facts Of Any Violation of 15 U.S.C. § 1681d(d)(2)

Even if Plaintiff were right about California law (he is not), Plaintiff still fails to state a claim under federal law.  Plaintiff's first count alleges violation of the following FCRA subsection:

> A consumer reporting agency shall not make an ***inquiry*** for the purpose of preparing ***an investigative consumer report*** on a consumer for employment purposes if the making of the inquiry by an employer or prospective employer of the consumer would violate any applicable Federal or State equal employment opportunity law or regulation.

15 U.S.C. § 1681d(d)(2)(emphasis added).

As an initial matter, Plaintiff does not allege that LexisNexis made any "inquiry" at all on Dollar General's behalf in 2012.  In fact, Plaintiff does not even allege that LexisNexis asked anyone anything about Plaintiff subsequent to Plaintiff's termination in 2010.  Plaintiff alleges no questions posed, no responses made, nothing but the bare allegation that LexisNexis operated the Esteem database, to which Plaintiff's former employer contributed information.

Even if Plaintiff had alleged an "inquiry," that would be far from sufficient.  To state a violation under 15 U.S.C. § 1681d(d)(2) and the *Twombly* standard, Plaintiff must allege facts which make plausible an 'inquiry *for the purpose of preparing an investigative consumer report*…" (emphasis added).  Section 1681d, under which Plaintiff sues, "relates solely to investigative consumer reports."  *Belshaw v. Credit Bureau of Prescott*, 392 F. Supp. 1356, 1360 (D. Ariz. 1975)(dismissing FCRA claims).

The FCRA provides:

> The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through *personal interviews* with *neighbors, friends, or associates* of the consumer reported on or with others with

whom he is acquainted or who may have knowledge concerning any such items of information.

15 U.S.C. § 1681a (emphasis added).

The personal interview is the essence of any investigative consumer report under the FCRA. Without personal interviews, there can be no "investigative consumer report". *See*, *e.g.*, *Ley v. Boron Oil Co.*, 419 F. Supp. 1240, 1242 (W.D. Pa. 1976) (finding that a report made on a businessman was not an "investigative consumer report" where no personal interviews had been conducted; "the statute requires that the information contained in the report be obtained by interviews"). Further, the alleged interview of Plaintiff by his former employer does not constitute a "personal interview" within the meaning of this section. *See*, Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations at 27, Comment 603(e)-3.A (July 2011).

Plaintiff alleges that LexisNexis obtained information from Plaintiff's unnamed former employer, but does not allege that LexisNexis did so pursuant to any "personal interview". Because the Ninth Circuit "operate[s] under the assumption that California courts would interpret the FCRA and [California consumer reporting law] consistently," a state court decision is especially instructive here. *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 890 (9th Cir. 2010). The relevant state court case on this issue is *Cisneros, supra.*

*Cisneros* involved a suit brought by nine low income renters against defendants, the U.D. Registry, Inc. ("UDR") and its president Harvey Saltz. "Defendant UDR gathers information regarding residential renters and sells that information to its subscribers, mainly landlords and their agents. The information comes from public records of unlawful detainers, forcible detainers, property damage cases, foreclosures, bankruptcies, and the like. UDR also solicits information from its subscribers, providing forms on which they are requested to describe each tenant, his or her treatment of the premises, and other behavior relevant to the tenancy. This information is then passed on to other subscribers screening applicants to fill a vacancy." *Cisneros, supra,* 39 Cal. App. 4th at 556. The California Court of Appeals held that this did not constitute the creation of an "investigative consumer report" under the FCRA or California's law:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Statutes are to be construed in accordance with their plain language. Section 1786.2 by its literal terms applies only to information obtained through "personal" interviews. While the dictionary definition of "personal" includes "of or pertaining to a particular person," "private," and "concerning a particular individual and his intimate affairs" (American Heritage Dictionary (2d ed. 1982) p. 925) in this context the word appears to mean "in person." …UDR solicits the information from landlords by way of forms sent to the subscribers to UDR's service, and landlords respond in writing. While this may be a form of "interview," it is not a "personal interview." Since neither UDR nor the landlord obtains the information through personal interview, the reports do not meet the definition of "investigative consumer reports,"

*Id.*

In nearly two decades since this 1995 decision, no California state court or federal court applying California or federal consumer credit reporting laws has questioned this definition of "personal interviews". Moreover, neither the California nor the federal legislatures has amended the relevant sections of their laws. Plaintiff cites to an "Advisory Letter to Hinkle," dated June 9, 1998, as providing FTC guidance ("Hinkle Letter"). See Request for Judicial Notice, Exhibit A. However, the Hinkle Letter concerns a consumer reporting agency as it "verifies former employment," prompted by a live job application to discuss a specific applicant's statements with that applicant's former employer. The Hinkle Letter concerns exactly the sort of 1-on-1 "personal interview" within the purview of the statute. Nothing in the Hinkle Letter would transform retail contributory databases into personal interviews.

**D.  Plaintiff Fails To Allege Facts Upon Which LexisNexis Would Have Reasonable Grounds To Believe Dollar General Had An Improper Purpose For The Esteem Report**

Plaintiff next claims that LexisNexis violated 15 U.S.C. § 1681b(1)(A)(ii) and 15 U.S.C. § 1681e(a). Section 15 U.S.C. § 1681b(1)(A)(ii) provides that:

A consumer reporting agency may furnish a consumer report for employment purposes only if- (A) the person who obtains such report from the agency certifies to the agency that…(ii) information from the consumer report will not be used in

    violation of any applicable Federal or State equal employment opportunity law or regulation.

Plaintiff does not claim that LexisNexis failed to obtain such a certification from Dollar General. Instead, per Plaintiff:

> Under 15 U.S.C. § 1681e(a) Defendants had a duty to make a reasonable effort to verify the uses certified by prospective users of Esteem consumer reports prior to furnishing them with the Esteem consumer reports. In addition, Defendants were prohibited from furnishing Esteem consumer reports if they had reasonable grounds for believing the reports would be used for a purpose not permitted under 15 U.S.C. §1681e.

The purpose of Section 1681e(a) is "to prevent improper disclosures." *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 (5th Cir. 2000). Accordingly, in order to maintain any claim under Section 1681e(a), the plaintiff must first show that LexisNexis made an improper disclosure. *Id.*; *see also Moreland v. CoreLogic SafeRent LLC*, 2013 U.S. Dist. LEXIS 157302 at *14-15 (C.D. Cal. Oct., 25, 2013) (granting motion to dismiss Section 1681e(a) claim when no allegation of disclosure for an impermissible purpose). But LexisNexis issued the report for a proper purpose, employment, and California law does not prohibit prospective employers from obtaining information from prior employers about in-store interviews or merchant detentions. Therefore, Plaintiff alleges no improper disclosure and has no 15 U.S.C. § 1681e(a) claim.

### E. Plaintiff Has Not Alleged Facts To Support A Willful Violation of the FCRA

Plaintiff has not demanded actual damages. Instead, Plaintiff has demanded statutory damages and attorneys' fees under 15 U.S.C. § 168ln. But Plaintiff has not alleged facts that support the right to any such recovery under either of his claims.

15 U.S.C.A. § 1681n only applies to a "person who *willfully* fails to comply with any requirement imposed under this subchapter" (emphasis added). There can be no liability under § 1681n unless the defendant has recklessly violated a "clearly established baseline" regarding FCRA requirements. *Ashby v. Farmers Ins. Co. of Oregon*, 565 F. Supp. 2d 1188, 1207 (D. Or. 2008). As

the Supreme Court noted when clarifying the willfulness standard:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)("*Safeco*"). In *Safeco*, the Court found no such recklessness:

> This is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took. Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC (which in any case has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question, see 15 U.S.C. §§ 1681s(a)(1), (e))…Given this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability.

*Safeco*, *supra*, 551 U.S. at 70.

Plaintiff's claims all depend upon an employer's request for an Esteem report violating California law. *See, e.g.*, *Complaint*, ¶91 (LexisNexis "had reasonable grounds for believing Esteem consumer reports would be used by California employers for a purpose not permitted" under California law). Plaintiff is wrong about the meaning of the California laws to which he cites, and their application to "detentions" by merchants. As shown above, the related and parallel federal guidance focuses exclusively on *criminal* detentions and *criminal* arrests. But even if he were right, LexisNexis has not identified – and Plaintiff fails to allege – a single authoritative source construing the laws in favor of Plaintiff's position that, in 2012, would have put LexisNexis on notice that that California law prohibited Esteem reports.

The willfulness analysis is no different simply because one of Plaintiff's claims involves LexisNexis's "reasonable grounds for believing" that Esteem reports are permissible under the

FCRA.  *See*, *e.g.*, *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. Ga. 2009) (affirming grant of summary judgment).  In *Levine*, a consumer claimed that a credit bureau violated § 1681e(a) by selling reports about closed accounts.  Nothing in the text of the FCRA resolved that point.  No court had ruled on the issue.  And "two staff opinion letters from the Federal Trade Commission" did not control because "the Supreme Court has expressly declined to describe such letters as 'authoritative guidance.'"  *Levine, supra,* 554 F.3d at 1319.  The District Court found, and the Court of Appeals affirmed, that the defendant's reading of the law was objectively reasonable, whether right or wrong.  "Because it was not objectively unreasonable to read the Act as allowing the sale of a report for a closed account, no investigation or procedure would have alerted Experian to the possibility of an impermissible use." *Id*.

Thus, even if Plaintiff succeeded in turning federal and state law on its head, and established a violation of federal law (he cannot), he will not be able to establish that LexisNexis willfully or recklessly disregarded existing authority as required to recover under 15 U.S.C. § 168ln.  *See*, *e.g.*, *Long v. Tommy Hilfiger U.S.A., Inc*., 670 F.3d 371, 378 (3rd Cir. 2012) (affirming grant of motion to dismiss because defendant's incorrect reading of law "was at least objectively reasonable"). LexisNexis cannot have recklessly disregarded authority that does not exist.  Therefore, Plaintiff's claims must be dismissed.

**IV.   CONCLUSION**

For all of the reasons set forth above, LexisNexis requests that this Court dismiss the Complaint pursuant to Rule 12(b)(6).

DATED:  June 16, 2014                **REED SMITH LLP**

By: */s/ Philip J. Smith*
   Linda S. Husar
   Philip J. Smith
   Diane A. Bettino (*admitted Pro Hac Vice*)
   Mark S. Melodia (*admitted Pro Hac Vice*)
   Paul J. Bond (*admitted Pro Hac Vice*)
   Attorneys for Defendant
   LEXISNEXIS RISK SOLUTIONS, INC.