MAYER BROWN LLP
JOHN P. ZAIMES (SBN 91933)
*jzaimes@mayerbrown.com*
John Nadolenco (SBN 181128)
*jnadolenco@mayerbrown.com*
Barrett L. Schreiner (SBN 266617)
*bschreiner@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone: (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
FIRST ADVANTAGE BACKGROUND
SERVICES, CORP.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. TSANG, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS, INC.; and FIRST ADVANTAGE BACKGROUND SERVICES, CORP.,<br><br>Defendants. | Case No.  4:14-cv-00493-YGR<br><br>**DEFENDANT FIRST ADVANTAGE BACKGROUND SERVICES, CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:      July 29, 2014**<br>**Time:      2:00 p.m.**<br>**Judge:     Hon. Yvonne Gonzalez Rogers**<br><br>**Complaint Filed:  January 31, 2014** |

708990171

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2       PLEASE TAKE NOTICE that on July 29, 2014, 2014 at 2:00 p.m., or as soon thereafter

3    as the matter may be heard in the United States District Court for the Northern District of

4    California, Oakland Division, in Courtroom 5, Second Floor, located at 1301 Clay Street,

5    Oakland, California 94612, Defendant First Advantage Background Services, Corp ("First

6    Advantage"), by and through its undersigned attorneys, will, and hereby does, move the Court to

7    dismiss plaintiff's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure

8    Rule 12(b)(6).

9       First Advantage's motion is based on this Notice of Motion and Motion, by the

10   Memorandum of Points and Authorities (the "Memorandum"), the Request for Judicial Notice,

11   and Declaration of Matthew B. O'Connor filed concurrently herewith, on the records on file in

12   this action, and on any argument that may be presented at or before the hearing on this motion.

13   For the reasons set forth in the Memorandum, First Advantage respectfully requests that the

14   Court dismiss plaintiff's FAC with prejudice because it fails to state a claim upon which relief

15   can be granted.

16   Dated: June 16, 2014                    MAYER BROWN LLP

17

18                                           By:  /s/ John P. Zaimes
                                                  John P. Zaimes
19                                           Attorneys for Defendant
                                             FIRST ADVANTAGE BACKGROUND
20                                           SERVICES, CORP.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    BACKGROUND ................................................................................... 3

    A.     Plaintiff's Claims ...................................................................... 3

    B.     Esteem Reports .......................................................................... 4

    C.     Dollar General ............................................................................ 5

III.   PLAINTIFF'S FAC FAILS TO STATE A CLAIM UPON WHICH RELIEF
      CAN BE GRANTED FOR ANY OF SEVERAL REASONS ......................... 5

    A.     Plaintiff's First Claim For Relief For Violation of Section 1681d(d)(2)
         Fails For Any of Three Independent Reasons ...................................... 6

        1.     Section 1681d(d)(2) Only Applies To Investigative Consumer
            Reports, And Esteem Reports Are Not Investigative Consumer
            Reports ............................................................................. 6

        2.     Plaintiff's Esteem Report Does Not Report A Detention, Only
            Plaintiff's Admission To Refund Fraud ..................................... 9

        3.     Merchant Detentions Pursuant To Penal Code § 490.5 Are Not
            Detentions Under Labor Code § 432.7 Or 2 C.C.R. § 11017 ............... 11

    B.     Plaintiff's Second Cause Of Action For Violation of Section 1681e(a)
         Also Fails to State a Claim for Several Independent Reasons ...................... 12

        1.     Plaintiff Has Failed To State A Claim For Violation Of Section
            1681e(a) Because He Has Failed To Allege A Predicate Violation
            Of Section 1681b .................................................................. 12

        2.     First Advantage Has Complied With The Remaining Requirements
            Of Section 1681e(a) .............................................................. 14

    C.     Plaintiff Fails To Allege That First Advantage Willfully Violated the
         FCRA ...................................................................................... 16

    D.     The FAC Should Be Dismissed With Prejudice ................................. 17

IV.    CONCLUSION ...................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4 *Adams v. National Engineering Services Corp.*,
5     620 F. Supp. 2d 319 (D. Conn. 2009) .......................................................................7

6 *Albrecht v. Lund*,
7     845 F.2d 193 (9th Cir. 1988) ....................................................................................17

*Ashcroft v. Iqbal*,
8     556 U.S. 662 (2009) ............................................................................................5, 17

9 *Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) ............................................................................................5, 17
10

11 *Beresh v. Retail Credit Co., Inc.*,
     358 F. Supp. 260 (C.D. Cal. 1973) ............................................................................7

12 *Boothe v. TRW Credit Data*,
13     557 F. Supp. 66 (S.D.N.Y. 1982) .............................................................................15

14 *Breese v. TRIADvantage Credit Servs., Inc.*,
     393 F. Supp. 2d 819 (D. Minn. 2005) ......................................................................15
15
*Central Valley Chapter of 7th Step Foundation, Inc. v. Younger*,
16     214 Cal. App. 3d 145 (1989) ....................................................................................12

17 *Cisneros v. U.D. Registry, Inc.*,
18     39 Cal. App. 4th 548 (1995) ..............................................................................7, 8, 9

19 *Cranston v. City of Richmond*,
     40 Cal. 3d 755 (1985) ...............................................................................................12
20
*Dumas v. Kipp*,
21     90 F.3d 386 (9th Cir. 1996) ......................................................................................17

22 *Eby v. Reb Realty, Inc.*,
23     495 F.2d 646 (9th Cir. 1974) ......................................................................................8

24 *Fuges v. Sw. Fin. Servs., Ltd.*,
     707 F.3d 241 (3d Cir. 2012) ........................................................................................6
25
*Gardner v. Martino*,
26     563 F.3d 981 (9th Cir. 2009) ....................................................................................18

27 *Hall v. Harleysville Ins. Co.*,
28     896 F. Supp. 478 (E.D. Pa. 1995) ..............................................................................7

ii

*Hansen v. Morgan*,
   582 F.2d 1214 (9th Cir. 1978) ...................................................................................16

*Henry v. Forbes*,
   433 F. Supp. 5 (D. Minn. 1976).....................................................................................7

*Klamath-Lake Pharm. Ass'n. v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 ..............................................................................................................17

*Korotki v. Attorney Servs. Corp. Inc.*,
   931 F. Supp. 1269 (D. Md. 1996)...................................................................................7

*Moreland v. CoreLogic SafeRent LLC*,
   No. SACV 13-470, 2013 WL 5811357 (C.D. Cal. Oct. 25, 2013)...................................13, 14

*People v. Zelinski*,
   24 Cal. 3d 357 (1970) ...................................................................................................12

*Poore v. Sterling Testing Sys., Inc.*,
   410 F. Supp. 2d 557 (E.D. Ky. 2006) .............................................................................7

*Safeco Ins. Co. of Am. V. Burr*,
   551 U.S. 47 (2007)........................................................................................................17

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ..........................................................................................6

*Smith v. Waverly Partners, LLC*,
   No. 10-CV-28, 2011 WL 3564427 (W.D. N.C. Aug. 12, 2011) .........................................7

*Washington v. CSC Credit Servs. Inc.*,
   199 F.3d 263 (5th Cir. 2000) .......................................................................................13, 14

*Williams v. Telespectrum, Inc.*,
   05-CV-853, 2006 WL 7067107 (E.D. Va. Nov. 7, 2006)..................................................6

*Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*,
   811 F.2d 1368 (10th Cir. 1987) ....................................................................................16

*Zeller v. Samia*,
   758 F. Supp. 775 (D. Mass. 1991) ...............................................................................16

**STATUTES**

15 U.S.C. § 1681 *et seq.*........................................................................................... passim

15 U.S.C. § 1681a(e)................................................................................................1, 7, 8

15 U.S.C. §1681a(y)(1)(B)-(D) ....................................................................................6

15 U.S.C. § 1681b(a)(3)(B) ...........................................................................13

15 U.S.C. §1681d.............................................................................................6

15 U.S.C. § 1681d(d)(2) ......................................................................... passim

15 U.S.C. § 1681e(a)..............................................................................passim

15 U.S.C. § 1681n.................................................................................3, 16, 17

15 U.S.C. § 1681q...........................................................................................16

Cal. Civ. Code § 47(c) ...................................................................................11

Cal. Civ. Code § 1786.2...................................................................................7

Cal. Code Regs. tit. 2, § 11017 .............................................................. passim

Cal. Code Regs. tit. 2, § 11017(d)(1)(A) ........................................................9

Cal. Labor Code § 432.7 ......................................................................... passim

Cal. Labor Code § 432.7(a)..................................................................... passim

Cal. Penal Code § 490.5 ...................................................................11, 12, 14

Cal. Penal Code §490.5(f)..........................................................................11, 18

Cal. Penal Code § 490.5(f)(1) ....................................................................11, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)....................................................................................5

Advisory Opinion to Hinkle, dated July 9, 1998
    (available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hinkle-
    07-09-98).....................................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

Plaintiff was denied employment by a prospective employer, Dollar General, when it discovered that he had *admitted* to refund fraud in the amount of $3,200 in a prior employment. But plaintiff does not seek recourse against his former employer who reported his admission to refund fraud, or the prospective employer who decided not to hire him based on that fraud. Instead, he sues Defendant First Advantage Background Services, Corp. ("First Advantage"), successor to non-moving Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis"),[1] simply because LexisNexis provided the report that Dollar General requested.

Plaintiff does not challenge the accuracy of the report in any way.  Instead, he brings an array of claims against First Advantage for violation of the Fair Credit Reporting Act, 15 U.S.C. section 1681 *et seq.* (the "FCRA").  However, each claim for relief fails to state a claim as a matter of law:

A.     Plaintiff alleges that First Advantage violated 15 U.S.C. section 1681d(d)(2)[2] by reporting to Dollar General that he had signed a statement admitting refund fraud in the amount of $3,200.  (His former employer reported the admission to LexisNexis, which stored it in a retail theft database, called the "Esteem" database.)  Plaintiff further alleges that LexisNexis reported the admission to Dollar General following Dollar General's request for a report and that, in so doing, LexisNexis violated FCRA section 1681d(d)(2).  Plaintiff's claim in this regard fails for any of three independent reasons:

1.     Section 1681d(d)(2) only applies to "investigative consumer reports," which are those "obtained through personal interviews."  15 U.S.C. § 1681a(e).  However, plaintiff does not—because he cannot—allege that

---

[1]     This motion is brought only by First Advantage.  LexisNexis will separately respond to the Complaint.  As plaintiff alleges, First Advantage purchased the Esteem database at issue in this litigation from LexisNexis in early 2013.  (FAC ¶ 1.)  All of the events giving rise to Plaintiff's Complaint occurred prior to this purchase.  Accordingly, for purposes of simplicity, this motion will at times refer to conduct by First Advantage and LexisNexis interchangeably.

[2]     All statutory references herein are to 15 U.S.C. section 1681 *et seq.*, unless otherwise stated.

1    the Esteem Report was based on even a single personal interview.  Thus, it

2    was admittedly not an investigative consumer report, and plaintiff's claim

3    under section 1681d(d)(2) fails.

4    2.    Plaintiff asserts that the Esteem report about him reported a "detention,"

5    but plaintiff's own allegations concede that the report does not mention

6    anything at all about detentions, simply reporting that "Plaintiff had

7    provided his then employer with an 'admission statement' related to the

8    alleged refund fraud on October 5, 2010."  (FAC ¶ 20.)  Plaintiff's claim

9    under section 1681d(d)(2) fails for this reason as well.

10   3.    Plaintiff also claims that his supposed detention by his employer was a

11   "detention", not a conviction, which should not have been reported under

12   California Labor Code section 432.7 and 2 C.C.R. section 11017.  But

13   those sections clearly apply only to a report regarding detentions by law

14   enforcement officials.  There is no authority for the proposition that a

15   merchant interview of an employee for possible misconduct is a

16   "detention" within the meaning of Labor Code section 432.7 and 2 C.C.R.

17   section 11017.

18   B.    Plaintiff also alleges a FCRA violation of section 1681e(a) based on First

19   Advantage's failure to comply with section 1681b, but this claim also fails for a number of

20   reasons, any of which supports dismissal:

21   1.    In order to state a claim under section 1681e(a), plaintiff must allege that

22   the report at issue was disclosed for an impermissible purpose in violation

23   of section 1681b.  Plaintiff fails to do so.  In fact, plaintiff alleges the

24   opposite, that First Advantage did disclose the report for employment

25   purposes—a *permissible* purpose—so this claim cannot be pursued.

26   2.    In addition, documents subject to judicial notice reveal that First

27   Advantage did obtain the certification required by section 1681b from

28   Dollar General, so there was no violation of section 1681b for this reason

2

as well.

3.      Finally, even if, as plaintiff contends, section 1681b imposed an obligation on First Advantage to prevent use of consumer reports for purposes that violate the equal employment opportunity laws (Labor Code section 432.7 and 2 C.C.R. section 11017), no such laws were violated here.  As described above, plaintiff's Esteem Report reported only the fact that he admitted refund fraud, not his detention, which is what sections 432.7 and 11017 prohibit.  Also, even if a detention had been reported, this was at first most a merchant "detention", and such detentions are not covered by Labor Code section 432.7 and 2 C.C.R. sections section 11017.  Again, because there was no violation of section 1681b, there was no violation of section 1681e(a), and this claim for relief fails to state a claim.

C.      Finally, plaintiff seeks statutory damages under the FCRA.  But the FCRA's statutory damages provision (15 U.S.C. section 1681n) requires a "willful" violation of the FCRA.  Here, even if First Advantage somehow violated sections 1681d(d)(2) or 1681e(a), the Complaint does not allege that it did so willfully.  Indeed, First Advantage's reading of the FCRA's requirements is either entirely correct, or at the very least entirely reasonable.  Therefore, any FCRA violation by First Advantage was not willful, and plaintiff could never be entitled to statutory damages.  Plaintiff's claim fails for this reason as well.

None of these errors can be cured by amendment, and the Court should therefore dismiss plaintiff's First Amended Complaint ("FAC") with prejudice.

## II.     BACKGROUND

### A.     Plaintiff's Claims

Plaintiff alleges that, while employed at a big box retail store in 2010, he was questioned about suspected refund fraud by a company loss-prevention officer and manager.  (FAC ¶¶ 12, 14.)  He then drafted and signed a statement admitting to a large amount of refund fraud – $3,200 worth – and was terminated.  (Request for Judicial Notice ("RJN") Ex. 1; FAC ¶¶ 16, 18.)

3

In June 2012, plaintiff submitted an online application for a position as store manager at another retail store, this one owned and operated by Dollar General. (FAC ¶ 19.) Plaintiff alleges that, after an interview, he was offered the job contingent on satisfactory completion of a background check. He authorized Dollar General to run that check. (*Id.*) He failed the background check and thereafter was denied employment with Dollar General. (*Id.* ¶¶ 20-21.)

Plaintiff further alleges that Dollar General had requested the background check from Defendant LexisNexis and that the background check included an Esteem Report indicating that plaintiff had provided his then employer with an "admission statement" concerning a refund fraud on October 5, 2010. (FAC ¶ 20.) Importantly, nowhere does plaintiff allege that the Esteem report made any mention of a detention. Neither does the Esteem report itself mention or refer to detention. (RJN Ex. 1.) Plaintiff alleges that, as a result of the information in the Esteem report, he failed the background check and was denied employment. (FAC ¶¶ 20-21.) The Esteem report revealed that plaintiff had admitted to refund fraud in the amount of $3,200. (RJN Ex. 1.)

## B. Esteem Reports

According to the FAC, the Esteem database from which Esteem Reports are generated is "comprised exclusively of information derived from the input of participating retail merchants," consisting of records of incidents of shoplifting, fraud, and theft. (*Id.* ¶ 1.) Plaintiff claims that all of the information in the Esteem database is provided by retailers and includes incident reports prepared by the retailers and either signed admission statements—like plaintiff's—or evidence of referral of incidents to law enforcement. (*Id.* ¶ 31.)

Plaintiff alleges that a LexisNexis subsidiary later acquired by First Advantage[3] created entries in the Esteem database from this information, and that, when requested, LexisNexis prepares consumer reports about individuals containing information from the Esteem database. (*Id.* ¶ 32.) Plaintiff admits that Esteem Reports contain:

> "*only* the following pieces of information: identifying information for the

---

[3]   Though plaintiff names First Advantage Background Services, Corp. as the defendant here, if the case proceeds, First Advantage will establish that it was First Advantage LNS Screening Solutions, Inc. that is the successor to the LexisNexis subsidiary.

individual, location details for the alleged theft, and ("theft incident details") which including notations for "Admission Status," "Legal Action," "Incident [type]," ("Type of Offense,") ("Incident Date,") and ("Theft Amount.")

(FAC ¶ 33 (emphasis added).)  Importantly, nowhere does plaintiff allege that *his* Esteem report or any other Esteem report actually states anything about detentions.  In fact, it does not.  (RJN Ex. 1.)

### C.   Dollar General

Plaintiff alleges that he was denied employment by Dollar General because of his admission to refund fraud contained in the Esteem report.  (FAC ¶¶ 20-21.)  As part of its service agreement, Dollar General provided certification to First Advantage's predecessor pursuant to sections 1681b(b)(1)(A)(ii) and 1681e(a), certifying that it would use reports only for employment purposes and that the information it obtained would not be used in violation of any federal or state equal employment opportunity law or regulation.  (RJN Ex. 3.)  That certification covered all of Dollar General's stores in the 40 states in which it operates.

### III.   PLAINTIFF'S FAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR ANY OF SEVERAL REASONS

Fed. R. Civ. P. 12(b)(6) requires dismissal of a plaintiff's complaint when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" conduct giving rise to a claim might have occurred.  *Id.* (quoting *Twombly*, 550 U.S. at 556).  And furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In addition, unless a plaintiff has adequately pled a FCRA claim against First Advantage in his own right, he "cannot represent others who may have such a claim," and his attempt to

assert such a claim on behalf of a class must fail.  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550,

560 (9th Cir. 2010) (quoting *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th

Cir. 2003)).  Here, the allegations in the FAC relating to plaintiff himself fall far short of

pleading a cognizable section 1681d(d)(2)  or section 1681e(a) violation, and plaintiff is

therefore foreclosed from pursuing a FCRA claim against First Advantage.

### A. Plaintiff's First Claim For Relief For Violation of Section 1681d(d)(2) Fails For Any of Three Independent Reasons

#### 1. Section 1681d(d)(2) Only Applies To Investigative Consumer Reports, And Esteem Reports Are Not Investigative Consumer Reports

Plaintiff's First Cause of Action against First Advantage is for violation of 15 U.S.C.

section 1681d.  Section 1681d applies only to "investigative consumer reports."  An investigative

consumer report is a consumer report[4] obtained through personal interviews:

> [t]he term 'investigative consumer report' means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is ***obtained through personal***

---

[4]     Esteem reports are also not "consumer reports" because they fall within a well-recognized exemption from the definition of consumer report under section 1681a(y).  Communications made for purposes of an employee investigation, like the one that Dollar General conducted here, are ***excluded*** from the definition of a "consumer report" if:

> (B) The communication is made to an employer in connection with an investigation of—
> > (i) suspected misconduct relating to employment; or
> > (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;
> (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
> (D) the communication is not provided to any person except—
> > (i) to the employer or an agent of the employer ….

15 U.S.C. §1681a(y)(1)(B)-(D); *id.* § 1581a(d)(2)(D); *see also Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 247 n.11 (3d Cir. 2012) ("The defined term 'consumer report' is subject to a number of statutory exclusions … includ[ing] … [c]ommunications relating to prospective employment [and] including investigative reports."  (citing 15 U.S.C. §§ 1681a(d)(2)(D); 1681a (o); 1681a(y)));  *Williams v. Telespectrum, Inc.*, 05-CV-853, 2006 WL 7067107, at *2 n.1 (E.D. Va. Nov. 7, 2006) (The Fair and Accurate Credit Transaction Act of 2003 "amended 15 U.S.C. § 1681a to exclude certain employee investigations," like those here, "from the definition of a consumer report.").  However, the allegations of plaintiff's FAC do not provide sufficient details regarding the reasons for Dollar General's employment investigation and so First Advantage cannot justifiably bring this argument on the pleadings.  If this case were to move beyond the pleadings stage, First Advantage would bring forth sufficient evidence to show that the Esteem report about plaintiff falls within the section 1681a(y) exemption from the definition of consumer reports, which will dispose of this entire action.

---

*interviews* with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

15 U.S.C. § 1681a(e) (emphasis added).  Courts have consistently held that a *personal interview* is a **prerequisite** to an investigative consumer report.  *See, e.g.*, *Beresh v. Retail Credit Co., Inc.*, 358 F. Supp. 260, 261 n.2 (C.D. Cal. 1973) (stating that investigative consumer reports are prepared through "personal interviews"); *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 569 (E.D. Ky. 2006) (same); *Korotki v. Attorney Servs. Corp. Inc.*, 931 F. Supp. 1269, 1278 n.26 (D. Md. 1996) (same), *aff'd sub nom. Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (4th Cir. 1997); *Hall v. Harleysville Ins. Co.*, 896 F. Supp. 478, 481 (E.D. Pa. 1995) (same); *Henry v. Forbes*, 433 F. Supp. 5, 7 (D. Minn. 1976).

Where there is no personal interview, there is no investigative consumer report.  For instance, in *Smith v. Waverly Partners, LLC*, No. 10-CV-28, 2011 WL 3564427 (W.D. N.C. Aug. 12, 2011), the court held that the section 1681d(d) claim failed as a matter of law because the consumer reporting agency "did not conduct any personal interviews of Plaintiff's neighbors, friends, associates, or anyone else about Plaintiff,"  and thus the report did "not constitute an investigative consumer report."  *Id.* at *3.  Similarly, in *Johnson v. Federal Express Corp.*, the court held that the report "***obviously*** is not an 'investigative report'" because there was no evidence that any personal interviews had taken place.  147 F. Supp. 2d 1268, 1273 (M.D. Ala. 2001) (emphasis added).  In *Massachusetts Mutual v. Orenyo*, the court held that the report at issue was not an investigative consumer report because it did not "contain information derived from personal interviews."  No. 96-5234, 1998 WL 1297799, *11 (D.N.J. July 24, 1998) (emphasis added); *see also Adams v. National Engineering Services Corp.*, 620 F. Supp. 2d 319, 328 (D. Conn. 2009) (same).

California courts are in accord.  In interpreting California Civil Code section 1786.2, California's analog to the FCRA—the California District Court of Appeal held that information obtained from forms filled out in writing by subscribers did not constitute an investigative consumer report because that information was not obtained through "personal interviews." *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 569 (1995).  The court further opined that

a personal interview means "in person," and while soliciting information by way of forms sent to subscribers who respond in writing "may be a form of 'interview,' it is not a 'personal interview.'" *Id.* at 569.

Here, plaintiff's FAC admits that neither First Advantage nor LexisNexis conducted personal interviews in preparing the Esteem report about plaintiff, or any other Esteem Report. Plaintiff alleges that participating retail merchants "input … records of incidents of shoplifting, fraud, and theft (FAC ¶ 1), which includes "incident reports prepared ***at the time*** individuals are detained for suspected theft or shoplifting and are accompanied by either signed "admission statements obtained during the detentions … or evidence of referral of the incidents for criminal action." (*Id.* ¶ 31 (emphasis added).) Plaintiff alleges that First Advantage (formerly LexisNexis) then used this information residing in the Esteem database to prepare the Esteem Report about plaintiff. (*Id.* ¶ 32.) Clearly absent from the FAC is a single allegation suggesting that any of the information contained in the Esteem report was obtained through personal interviews[5].

Plaintiff tries to address this deficiency by alleging that First Advantage conducts "personal interviews" by obtaining responses to continuing and outstanding questions from retailers. (FAC ¶¶ 73-74.) This assertion is empty. If this assertion were true, a personal interview within the meaning of section 1681a(e) would occur practically any time information was submitted to a consumer reporting agency by a provider of information. That would destroy

---

[5] Plaintiff goes through machinations trying to make it look like personal interviews underlie Esteem reports, but his attempts fail. Plaintiff references an "Advisory Opinion to Hinkle, dated July 9, 1998 (FAC ¶ 62)—which is actually a staff letter—which discusses what type of questions posed during a conversation between a representative of a consumer reporting agency and a former employer would make the conversation into an interview within the meaning of section1681a(e). *See* "Advisory Opinion to Hinkle, dated July 9, 1998 (available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hinkle-07-09-98). But instead of indicating that certain types of questions posed to a former employer *ipso facto* result in an investigative consumer report, as plaintiff suggest (FAC ¶ 62), the staff letter actually reveals that even fact-checking conversations between consumer reporting agencies and former employers may not be interviews within the meaning of section1681a(e). Moreover, but even if the staff letter could somehow be read to support plaintiff's theory, FTC advisory opinions are not binding on the FTC, let alone the Court. The staff letter itself states that the "views set forth in this opinion are those of the staff, and are not binding on the Commission." Advisory Opinion to Hinkle, dated July 9, 1998 (available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hinkle-07-09-98). And case law is clear that such informal letters are not binding on courts. *See, e.g.*, *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir. 1974).

the distinction, clearly demarcated by the FCRA, and made clear by *Cisneros*, between investigative consumer reports and non-investigative consumer reports.

The Esteem Report at issue was not obtained by personal interviews, and Section 1681d(d)(2) therefore does not apply here.  Plaintiff's first cause of action fails to state a claim and should be dismissed with prejudice.

### 2.    *Plaintiff's Esteem Report Does Not Report A Detention, Only Plaintiff's Admission To Refund Fraud*

Plaintiff also alleges in his First Claim for Relief that the communication of the Esteem report violated Labor Code section 432.7 and 2 C.C.R. section 11017 because "Esteem consumer reports are nothing more than detention records for alleged crimes that did not result in criminal convictions."  (FAC ¶ 40.)

Labor Code section 432.7(a) provides that no employer shall:

> seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, <u>any record of arrest or **detention** that did not result in conviction</u>, or any record regarding a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law …

Lab. Code § 432.7(a).  A related regulation, 2 C.C.R. section 11017(d)(1)(A), similarly states that "it is unlawful for an employer or other covered entity to inquire or seek information regarding any applicant concerning … any arrest or detention that did not result in conviction." Cal. Code Regs. tit. 2, § 11017(d)(1)(A).

In the first instance, plaintiff does not allege facts indicating that his Esteem Report reported a detention of any kind.  In fact, the Esteem Report about plaintiff does not say a thing about detention or reference it in any way.  (RJN Ex. 1.)  Plaintiff himself alleges that Esteem reports in general contain:

> ***only*** the following pieces of information: identifying information for the individual, location details for the alleged theft, and "theft incident details" which including notations for "Admission Status," "Legal Action," "Incident [type]," "Type of Offense," "Incident Date," and "Theft Amount."

(FAC ¶ 33 (emphasis added).)

9

As for the specific report about plaintiff, he only alleges that "[t]he Esteem consumer report contained information ***related*** to plaintiff's October 2010 detention for alleged refund fraud, indicating that plaintiff had provided his then employer with an 'admission statement' related to the alleged refund fraud on October 5, 2010." (FAC ¶ 20 (emphasis added).)  Plaintiff is tellingly careful not to allege that *the Esteem report about him* stated anything about a detention, because he cannot. (RJN Ex. 1.)  He merely alleges that the information in the report—his admission to refund fraud—was related to an alleged detention, <u>which is nowhere mentioned in the Report</u>.

Labor Code section 432.7 and 2 C.C.R. section 11017 only apply to arrests or detentions. Plaintiff must allege that one or the other was mentioned in the Esteem report to fit within that statute regulation.  He cannot allege that he was arrested, let alone that an arrest was reported in the Esteem report, and he does not allege that the report about him mentioned any detention. Plaintiff's delicate pleading actually highlights the fact that his Esteem report did not record or report detentions, but only reported his admission to refund fraud in the amount of $3,200. (RJN Ex. 1.)

Plaintiff attempts to rehabilitate his insufficient pleadings by attaching as an exhibit to his FAC an "incident report provided by [an Esteem] member[] to Defendants" ***about someone else*** who admitted to retail theft in Pennsylvania, noting that that report specifically referenced the subject's detention.  (FAC ¶ 41; *id.* Ex. A.)  But the fact that the report to First Advantage by some other retailer outside of California references detention clearly does not mean that any information about plaintiff in his Esteem report is a record of detention.[6]

In the final analysis, if Dollar General had directly contacted plaintiff's former employer, and the former employer had informed Dollar General of plaintiff's admission to $3,200 worth of retail fraud, there would have been no violation of any equal opportunity law or regulation. That is because former employers are undoubtedly entitled to provide such candid job-performance related information about former employees to other prospective employers.  *See,*

---

[6] Indeed, a report "based on" a detention is not the same as a "report **of**" a detention. Plaintiff needs to allege the latter, not the former.

*e.g.*, Cal. Civ. Code § 47(c) (qualified privilege for communications from a former employer to a prospective employer about an employee). The fact that Dollar General learned of plaintiff's refund fraud through an intermediary does not change the analysis. And the fact that plaintiff's refund fraud was recorded in an Esteem report does not somehow turn the Esteem report into a record of detention.

Accordingly, plaintiff's section 1681d(d)(2) claim should also be dismissed because he does not allege that his Esteem Report is a detention record.[7]

### 3.     Merchant Detentions Pursuant To Penal Code § 490.5 Are Not Detentions Under Labor Code § 432.7 Or 2 C.C.R. § 11017

Plaintiff makes another long leap of logic by asserting that a merchant detention pursuant to Penal Code section 490.5(f) is a "detention that/which did not result in conviction" within the meaning of Labor Code section 432.7(a) and 2 C.C.R. section 11017(d)(1)(A). This, too, is wrong as a matter of law.

Penal Code section 490.5(f)(1) provides that,

> A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises.

Penal Code § 490.5(f)(1). Plaintiff relies heavily on the use of the term "detain" in Penal Code section 490.5(f) to make this purported connection, but the similarities between section 490.5(f), on the one hand, and Labor Code section 432.7(a) and the related C.C.R. section, on the other, stop there. Labor Code section 432.7 and 2 C.C.R. 11017 are intended to prevent the ***law enforcement power of the state*** from being improperly applied to a person's employment. That is clear from their references to arrest, detention and conviction. Only the state can engage in arrest, detention and conviction. Private parties like retailers cannot do those three things. As

---

[7]     And of course, reports about signed admissions to refund fraud can be obtained, and referrals of suspected theft to law enforcement can be made, without any form of detention. There can be no doubt that many employee admissions are obtained in the normal course of business, during the employee's shift, without any indication of a detention. Other employees with guilty consciences come forward on their own and voluntarily sign an admission statement without any kind of detention. It is entirely improper for plaintiff to broadly suggest that his Esteem report and all others reports are premised, reflect, record, or report detentions.

explained by the California Supreme Court, when a merchant detains someone pursuant to Penal Code section 490.5, "the merchant is exercising a purely private and self-interested right to protect his property." *People v. Zelinski*, 24 Cal. 3d 357, 368 n.10 (1970). Indeed, "[d]etention and search of a shoplifter, followed by release by the merchant, brings into play no state interest that concerns us here." *Id.*

Moreover, we are aware of no case or other authority that supports the proposition that a merchant interview – even a merchant detention – is a detention within the meaning of Labor Code section 432.7(a) or 2 C.C.R. section 11017(d)(1)(A). In every published California case discussing these provisions, the term "detention" is used to refer only to detentions by law enforcement officials. *See, e.g.*, *Central Valley Chapter of 7th Step Foundation, Inc. v. Younger*, 214 Cal. App. 3d 145, 150-51 (1989) (discussing records of arrest and detention maintained by the California Department of Justice); *Cranston v. City of Richmond*, 40 Cal. 3d 755, 773-74 (1985) (discussing detention by police officers). Accordingly, Labor Code section 432.7 and 2 C.C.R. 11017 do not refer to merchant detentions under Penal Code section 490.5(f)(1). Because this predicate to plaintiff's section 1681d(d)(2) claim fails, his first cause of action fails for this reason as well.

**B.      Plaintiff's Second Cause Of Action For Violation of Section 1681e(a) Also Fails to State a Claim for Several Independent Reasons**

> ***1.      Plaintiff Has Failed To State A Claim For Violation Of Section 1681e(a) Because He Has Failed To Allege A Predicate Violation Of Section 1681b***

Plaintiff's second claim for relief is based on First Advantage's alleged violation of the "reasonable procedures" requirement of section 1681e(a). That section provides that:

> Every consumer reporting agency shall maintain <u>reasonable procedures designed … to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title.</u> <u>These procedures shall require that prospective users</u> of the information identify themselves, <u>certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.</u> Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a) (emphasis added).

In order to state a claim for violation of section 1681e(a), plaintiff must first allege that First Advantage violated section 1681b. *See Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000) ("[A] plaintiff bringing a claim that a reporting agency violated the "reasonable procedures" requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b."); *Moreland v. CoreLogic SafeRent LLC*, No. SACV 13-470, 2013 WL 5811357, at *6 (C.D. Cal. Oct. 25, 2013) (same).  Here, plaintiff has not alleged that First Advantage:  a) released the Esteem Report about plaintiff for an improper purpose or b) failed to obtain certification of the proper use of the Report from Dollar General in violation of section 1681b in violation of the "reasonable procedures" requirement of § 1681e. Plaintiff's section 1681e(a) claim fails as a result.

The "permissible purpose" provision of section 1681b provides that "any consumer reporting agency may furnish a consumer report under the following circumstances and no other: … [t]o a person which it has reason to believe … intends to use the information for employment purposes."  15 U.S.C. § 1681b(a)(3)(B).  Here, plaintiff admits that, as part of his online application for employment with Dollar General, he agreed that Dollar General could perform a background check on him, that plaintiff interviewed for, and was offered, a job pending the completion of a background check, and that he was denied employment with Dollar General because he failed the background check.  (FAC ¶¶ 19, 21.)  Because First Advantage provided the Esteem report to Dollar General for employment purposes, it provided the report for a permissible purpose under section 1681b(a)(3)(B).  Accordingly, plaintiff has not stated a claim under section 1681b, and he has thus also not stated a claim under section 1681e(a). *Washington*, 199 F.3d at 267; *Moreland*, 2013 WL 5811357, at *6; *Baker*, 2010 WL 2104622, at *4.

Plaintiff next attempts to make the certification requirement of section 1681b(b)(1)(A)(ii) a part of the permissible purpose requirement of section 1681b(a)(3)(b). But while the two are distinct, First Advantage complied with the certification requirements in all events.  Section 1681b(b)(1)(A)(ii) simply imposes on First Advantage the obligation to obtain a certification

from Dollar General that Dollar General will not use reports in violation of any applicable Federal or State equal employment opportunity law or regulation.  First Advantage did obtain this exact certification prior to furnishing reports to Dollar General.  (RJN Ex. 2.)  Accordingly, First Advantage has complied with its obligations under section 1681b(b)(1)(A)(ii).  For this reason, too, plaintiff fails to state a claim under section 1681b, and he thus has not stated a claim under section 1681e(a).  *See Washington*, 199 F.3d at 267; *Moreland*, 2013 WL 5811357, at *6; *Baker*, 2010 WL 2104622, at *4.

But even if section 1681b(b)(1)(A)(ii) imposed something other than an obligation on First Advantage to obtain Dollar General's certification (it does not), there also has been no violation of section 1681b, because Dollar General, as well as other procurers of Esteem reports, have not used Esteem reports in violation of equal opportunity laws or regulations, in general, or Labor Code section 432.7(a) and 2 C.C.R. section 11017(d)(1)(A), in particular.  As discussed above, those equal opportunity provisions prohibit employers from relying on records of detention that did not result in conviction.  But the Esteem report about plaintiff is not a record of a detention, but a record of plaintiff's admission to retail theft.  *See* Section III.A.2, *supra*.  It nowhere mentions a detention, and plaintiff does not plead otherwise.  Further, as also discussed above, merchant detentions pursuant to Penal Code section 490.5 are not detentions under Labor Code section 432.7 or 2 C.C.R. section 11017.  *See* Section III.A.3, *supra*.

Plaintiff has failed to state a claim under section 1681b for these reasons as well, and he has failed to state a claim under section 1681e(a) as a result.  *See Washington*, 199 F.3d at 267; *Moreland*, 2013 WL 5811357, at *6; *Baker*, 2010 WL 2104622, at *4.

### 2.   *First Advantage Has Complied With The Remaining Requirements Of Section 1681e(a)*

In addition to requiring compliance with section 1681b, section 1681e(a) provides four requirements addressed to consumer reporting agencies:

(1) that [consumer reporting agencies] maintain reasonable procedures to limit the furnishing of consumer reports to permissible purposes; (2) [the consumer reporting agency's] procedures require that [procurers] identify[y] themselves and certify the purpose for which [consumer reports are] sought and to certify that the information will be used for no other purpose; (3) [the consumer reporting

14

agency] will make reasonable efforts to verify new prospective users; (4) [the consumer reporting agency] may not furnish a consumer report if it has reasonable grounds to believe that the consumer report will be used for an impermissible purpose.

*Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 823 (D. Minn. 2005).

Plaintiff claims that First Advantage violated the first and fourth requirements of section 1681e(a)—that First Advantage did not make a reasonable effort to verify the uses certified by prospective users of Esteem reports prior to furnishing such reports, and that First Advantage did not have reasonable grounds for believing the reports would be used for a purposed listed in section 1681b.  (FAC ¶ 84.)  Plaintiff's theory misconstrues both Dollar General's operations and the nature of the FCRA's certification requirements.

Dollar General is not primarily a California employer.  Its request for an Esteem report about plaintiff came from Dollar General's corporate headquarters in Tennessee, and First Advantage returned an Esteem report about plaintiff to Dollar General in Tennessee.  (RJN Ex. 1.)  First Advantage's predecessor obtained certifications from Dollar General, pursuant to sections 1681b(b)(1)(A)(ii) and 1681e(a), that it would use reports only for employment purposes and that the information it obtains will not be used in violation of any federal or state equal employment opportunity law or regulation.  (RJN Ex. 2.)  That certification covered all of Dollar General's stores in the 40 states in which it operates, including California.

Under FCRA, the single certification First Advantage received from Dollar General was all that was needed.  As courts have recognized,

it would be impractical to require [consumer reporting agencies] to verify the purpose for each credit report.  By requiring its subscribers to certify the purpose for repots in advance, [a consumer reporting agency] reasonably strikes a balance between the conflicting goals of protecting the privacy rights of consumers and promoting an efficient credit economy.

*Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982).  Accordingly, there was nothing "necessarily false" (FAC ¶ 89) about Dollar General's certification that it would only use reports for employment purposes and would not use reports in violation of equal employment opportunity laws and regulations.  Dollar General's certification covered more than just its California operations, and especially because Dollar General communicated with First

15

1  Advantage through its Tennessee offices, First Advantage was under no obligation to specifically

2  inquire or seek a specific certification with respect to plaintiff that Dollar General would not use

3  the Esteem report in violation of *California's* equal employment opportunity laws and

4  regulations.

5      Plaintiff's theory that First Advantage violated section 1681e(a) because the Esteem

6  Report violated equal employment opportunity laws will not fly.  First Advantage did not have

7  reason to believe that any particular report—including the report about plaintiff—was

8  necessarily being furnished for employment in California.  Accordingly, it did not know, nor was

9  it reckless in failing to know, that Dollar General would use the Esteem report about plaintiff in a

10  manner that allegedly violated California equal opportunity laws and regulations.  (*Cf.* FAC ¶

11  91.)  Thus, the procedures First Advantage followed to limit the furnishing of reports for

12  permissible purposes—obtaining a certificate from a well-known and established nationwide

13  employer—were reasonable.  For similar reasons, First Advantage did not have reasonable

14  grounds to believe the report about plaintiff was being furnished for an improper purpose.[8]

15  Accordingly, First Advantage did not violate section 1681e(a), and plaintiff's second cause of

16  action fails for this reason as well.

17      **C.    Plaintiff Fails To Allege That First Advantage Willfully Violated the FCRA.**

18      For the reasons reviewed above, plaintiff cannot allege that First Advantage violated the

19  FCRA.  But even if he could, he certainly has not properly alleged that First Advantage did so

20  ─────────────────

21  [8]    Once First Advantage possesses the necessary certifications and conducts the necessary verifications, the onus is on employers and other users of reports to comply with their representations.  This makes common sense because "[e]ven consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes."  *Hansen v. Morgan*, 582 F.2d 1214, 1220 (9th Cir. 1978).  Accordingly, the FCRA creates civil and criminal liability for users who obtain reports under false pretenses.  15 U.S.C. §§ 1681n, 1681q; *Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*, 811 F.2d 1368, 1370 (10th Cir. 1987) ("15 U.S.C. § 1681q imposes criminal liability upon any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses. 15 U.S.C. § 1681n provides a private cause of action against any person who willfully fails to comply with any "requirement" of the FCRA. Violation of § 1681q provides a basis for civil suit pursuant to § 1681n."); *Zeller v. Samia*, 758 F. Supp. 775, 781 (D. Mass. 1991) ("If a user requests information from a consumer reporting agency for a purpose not permitted by section 1681b, while representing to the agency that the report will be used for a permissible purpose, the user may be liable for obtaining information under false pretenses under section 1681q.").

1   *willfully* under 15 U.S.C. § 1681n.  Section 1681n(a)(1) allows consumers to recover any actual

2   damages sustained, or statutory damages of between $100 and $1,000, for any *willful* failure to

3   comply with the FCRA.  15 U.S.C. § 1681n(a)(1).  The costs and attorneys fees recoverable

4   under section 1681n(a)(3) also require a *willful* violation.

5          Here, besides conclusory allegations not linked to any conduct, which are insufficient

6   under *Twombly* and *Iqbal*, plaintiff alleges no facts supporting a claim that First Advantage

7   willfully violated the FCRA.  Any violation of section 1681d(d)(2) by First Advantage (or

8   LexisNexis) was based on First Advantage's (or LexisNexis') reading of section 1681d(d)(2)—

9   detailed in the above analysis—and its conclusion that the provision does not apply to Esteem

10  reports.  This reading renders First Advantage's alleged failures under FCRA, at the very worst

11  erroneous, but still reasonable and justified—not willful.  *See  Safeco Ins. Co. of Am. V. Burr*,

12  551 U.S. 47, 69-70 (2007) (finding that FCRA violations were not willful under section 1681n,

13  because, although based on an erroneous reading of FCRA, the reading had a statutory basis and

14  thus was not objectively unreasonable).  The same is true of First Advantage's reading of and

15  conduct under section 1681e(a).  Even if there were some violation of section 1681e(a) First

16  Advantage's certification and verification of the uses to which Dollar General indicated it would

17  put the reports was reasonable and justified.  Thus, plaintiff has failed to allege a willful violation

18  of the FCRA, and this Court should also dismiss plaintiff's FAC because it alleges only a willful

19  violation.  (FAC ¶¶ 6, 77, 92; Prayer for Relief at 20, ¶¶ c, e.)

20         **D.     The FAC Should Be Dismissed With Prejudice**

21         The Ninth Circuit has held that:  if amending a pleading would be futile, a Court may

22  dismiss the pleading with prejudice:

23         if a complaint is dismissed for failure to state a claim upon which relief can be
           granted, leave to amend may be denied, even if prior to a responsive pleading, if
24         amendment of the complaint would be futile.  If the district court determines that
           the allegation of other facts consistent with the challenged pleading could not
25         possibly cure the deficiency, then the dismissal without leave to amend is proper.

26  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988); *see also Dumas v. Kipp*, 90 F.3d 386, 389

27  (9th Cir. 1996) ("dismissals are appropriate when it is clear that the complaint cannot be saved

28  by further amendment); *Klamath-Lake Pharm. Ass'n. v. Klamath Med. Serv. Bureau*, 701 F.2d

                                                17

1  1276, 1293 (9th Cir. 1983 (denying amendment where "it could not affect the outcome of the

2  lawsuit").

3       In this case, amendment of plaintiff's FAC to allege additional facts would not correct all

4  of the numerous deficiencies in plaintiff's claims for relief reviewed above.  For example,

5  plaintiff will never be able to allege that his Esteem Reports were obtained through personal

6  interviews.  Plaintiff will never be able to change the content of his Esteem Report to make it a

7  record of detention either.  A merchant detention under Penal Code section 490.5(f) will never be

8  a detention within the meaning of Labor Code section 432.7(a) and 2 C.C.R. section

9  11017(d)(1)(A).  And First Advantage will always have obtained the necessary certifications

10  from Dollar General and followed reasonable procures to ensure Dollar General used reports for

11  a proper purpose.  No amount of re-pleading will change these facts.  "When a proposed

12  amendment would be futile, there is no need to prolong the litigation by permitting further

13  amendment."  *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

14       Moreover, plaintiff here has already been allowed to amend his complaint once.  He

15  should not be allowed a second bite at the apple.  Rather, to prevent further waste of judicial

16  resources and party resources, plaintiff's FAC should be dismissed without leave to amend.

17  **IV.**    **CONCLUSION**

18       For the foregoing reasons, plaintiff's FAC should be dismissed with prejudice.

19  Dated: June 16, 2014                    MAYER BROWN LLP

20

21                                By:  */s/ John P. Zaimes*

22                                  John P. Zaimes
                                Attorneys for Defendant

23                                  FIRST ADVANTAGE BACKGROUND
                                SERVICES, CORP.

24

25

26

27

28