JEFFREY F. KELLER (SBN 148005)
jfkeller@kellergrover.com
ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
CAREY G. BEEN (SBN 240996)
cbeen@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone:   (415) 543-1305
Facsimile:   (415) 543-7861

Attorneys for Plaintiff
G. TSANG, individually and on behalf of
classes of similarly situated individuals

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**(OAKLAND DIVISION)**

| | |
|---|---|
| G. TSANG, individually and on behalf of classes of similarly situated individuals, | Case No:  4:14-CV-00493-YGR |
| | <u>CLASS ACTION</u> |
| Plaintiffs, | **PLAINTIFF'S OPPOSITION TO DEFENDANT FIRST ADVANTAGE BACKGROUND SERVICES, CORP.'S MOTION TO DISMSS** |
| v. | |
| LEXISNEXIS RISK SOLUTIONS INC.; and FIRST ADVANTAGE BACKGROUND SERVICES, CORP., | Date:   July 29, 2014 |
| | Time:   2:00 pm |
| | Ctrm:   4, 3rd Floor |
| Defendants. | Judge:   The Hon. Yvonne Gonzalez Rogers |
| | Action Filed:  January 31, 2014 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 3

III.    LEGAL STANDARD ON A MOTION TO DISMISS UNDER RULE 12(**B**)(**6**) ............. 5

IV.     ARGUMENTS ........................................................................................................... 6

       A.    Plaintiff Has Properly Alleged a Violation of 15 U.S.C. § 1681e. ........................ 6

             1.    California Employers are Prohibited from Seeking Esteem Consumer Reports Under State Equal Employment Opportunity Law and Regulation. ............................................................................................. 7

                   a.    Use of Information Concerning Any Arrests or Detentions for Employment Purposes is Prohibited under California Law. ................................................................................................ 8

                   b.    Retail Merchants are Empowered to Arrest or Detain Under California Law. ........................................................................... 10

                   c.    Employers' Use of Esteem Consumer Reports Violates California Law. ........................................................................... 11

             2.    First Advantage's Argument that Merchant Detentions are Not Detentions under Labor Code § 432.7 and 2 C.C.R. § 11017 is Meritless. ....................................................................................................... 12

             3.    Esteem Reports Provide Information Concerning Detentions. ................. 14

             4.    Blanket Certifications from Employers Do Not Relieve First Advantage from Liability Under § 1681e. ............................................... 15

       B.    Plaintiff Has Alleged Willful Conduct on the Part of First Advantage. .............. 18

V.      CONCLUSION ....................................................................................................... 20

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

## TABLE OF AUHORITIES

2

**Page**

3
**Cases**

4
*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................ 5

5

6
*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696 (9th Cir.1988) .......................................................... 6

7
*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ...................................................................... 6

8

9
*Boothe v. TRW Credit Data*
    557 F. Supp. 66 (S.D.N.Y. 1982) ....................................... 15, 16

10
*Brahmana v. Lembo*
    2011 WL 1674993 (N.D. Cal. May 4, 2011) ........................ 10, 14

11

12
*Central Valley Chap. 7th Step Foundation v. Younger*
    95 Cal. App. 3d 212 (1979) ........................................................... 9

13
*Cervantez v. J.C. Penny Co.*
    24 Cal.3d 579 (1979) .................................................................. 11

14

15
*Cholakyan v. Mercedes-Benz USA, LLC*
    796 F.Supp.2d 1220 (C.D. Cal. 2011) .......................................... 6

16
*Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.*
    611 F.3d 495 (9th Cir. 2010) ......................................................... 6

17

18
*Cooper v. Pickett*
    137 F.3d 616 (9th Cir. 1997) ...................................................... 18

19
*Corona v. Target Corporation*
    2010 WL 3221866 (N.D. Cal., Aug. 13, 2010) ............................. 8

20

21
*Davis v. Asset Servs.*
    46 F.Supp.2d 503 (M.D.La.1998) .............................................. 16

22
*Erickson v. Pardus*
    551 U.S. 89 (2007) ........................................................................ 5

23

24
*Guimond v. Trans Union Credit Info. Co.*
    45 F.3d 1329 (9th Cir. 1995) .................................................. 6, 16

25
*Hiemstra v. TRW, Inc.*
    195 Cal.App.3d 1629 (Cal.Ct.App.1987) ................................... 16

26

27
*Indus. Welfare Com. v. Superior Court*
    27 Cal. 3d 690 (1980) ................................................................. 10

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

## TABLE OF AUTHORITIES
### (Continued)

*Kates v. Croker National Bank*
    776 F.2d 1396 (9th Cir. 1985) ............................................................................. 6

*Kelly v. Methodist Hospital of So. California*
    22 Cal. 4th 1108 (2000) ..................................................................................... 10

*Kerrigan v. Fair Employment Practice Com.*
    91 Cal. App. 3d 43 (1979) .................................................................................. 9

*Marder v. Lopez*
    450 F.3d 445 (9th Cir. 2006) .............................................................................. 6

*Moffat v. Buffums' Inc.*
    21 Cal. App. 2d 371 (1937) ............................................................................... 11

*Navarro v. Block*
    250 F.3d 729 (9th Cir.2001) ............................................................................... 5

*People v. Crowder*
    136 Cal. App. 3d. 841 (1982) ............................................................................ 10

*People v. Zelinski*
    24 Cal.3d 357 (1979) .............................................................................. 10, 11, 13

*Pintos v. Pacific Creditors Association*
    605 F.3d 665 (2009) ..................................................................................... 16, 17

*Pittman v. City of Oakland*
    197 Cal.App.3d 1037 (1988) .............................................................................. 8

*Robins v. Spokeo, Inc.*
    742 F.3d 409 (9th Cir. 2014) ............................................................................. 18

*Safeco Inc. Co. of Am. v. Burr*
    551 U.S. 47 (2007) ............................................................................................ 18

*Schering Corp. v. First Databank, Inc.*
    479 F. Supp. 2d 468 (D.N.J. 2007) .................................................................... 15

*St. Paul Guardian Insurance Co. v. Johnson*
    884 F.2d 881 (5th Cir.1989) ............................................................................... 6

*T.N.G. v. Superior Court*
    4 Cal.3d 767 (1971) .......................................................................................... 14

*Utz v. Cullinane*
    520 F.2d 467 (D.C. Cir. 1975) ............................................................................ 9

*Vernon v. State*
    116 Cal. App.4th 114 (2004) ............................................................................. 10

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

**TABLE OF AUTHORITIES**
(Continued)

2

*Washington* and *Boothe v. TRW Credit Data*
    557 F. Supp. 66 (S.D.N.Y. 1982) ..................................................... 15, 16

*Washington v. CSC Credit Servs. Inc.*
    199 F.3d 263 (5th Cir. 2000)........................................................... 15, 16

*Westcott v. Yuba County*
    104 Cal.App.3d 103 (1980) .................................................................. 14

**Statutes**

Government Code
    § 12920 ................................................................................................ 10
    § 12921 ................................................................................................ 10

12 United States Code
    § 1829 .................................................................................................... 8

15 United States Code
    § 1681 .................................................................................................... 1
    § 1681a .................................................................................................. 1
    § 1681b ........................................................................................ passim
    § 1681e ........................................................................................ passim
    § 1681n .......................................................................................... 3, 18

California Code of Regulations, Title 2
    § 11017 ........................................................................................ passim

Labor Code
    § 432.7 ......................................................................................... passim

California Penal Code
    § 490.5 ........................................................................................ 10, 11
    § 834 ................................................................................................... 13
    § 837 ........................................................................................ 10, 11, 13
    § 1203.4 ................................................................................................ 8
    § 1203.45 .............................................................................................. 8
    § 1210.1 ................................................................................................ 8

**Rules**

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................. 18
    Rule 9 ................................................................................................. 18
    Rule 12(b)(6) ........................................................................................ 6

**Other Authorities**

Blacks Law Dictionary, Ninth Edition ...................................................... 13
California Jury Instruction - Criminal No. 2.72 ........................................ 11

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

This class action lawsuit arises out of defendants First Advantage Background Services, Corp.'s ("First Advantage") and LexisNexis Risk Solutions, Inc.'s ("LexisNexis") (collectively "Defendants") sharing of Esteem consumer reports with employers in the state of California. Plaintiff G. Tsang ("Plaintiff") alleges in his First Amended Complaint ("FAC") that Defendants' sharing of Esteem consumer reports with employers for use in the state of California has violated, and continues to violate, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), specifically 15 U.S.C. § 1681e ("§ 1681e").[2]

Esteem consumer reports are consumer reports that have been prepared by First Advantage, and before them LexisNexis, using information from the "Esteem" "Retail Theft Contributory database" ("Esteem Database").    Plaintiff alleges that the Esteem Database is comprised exclusively of retail merchants' internal shoplifting, fraud, and theft detention records. The vast majority, if not all, of the detention records in the database relate to alleged crimes that were never criminally prosecuted and for which no criminal conviction ever resulted.

Despite the fact that Esteem consumer reports represent little more than unprosecuted criminal allegations, retail merchants who participate in the Esteem Database, including retail merchants operating in the state of California, use Esteem consumer reports provided to them by First Advantage to automatically disqualify job candidates from potential employment.    As a result, individuals who are included in the database are deprived of a significant number of retail

---

[1] Plaintiff has submitted separate oppositions to the two motions to dismiss filed by defendants LexisNexis and First Advantage.    Because the motions to dismiss raise substantially similar arguments, significant portions of each of the two oppositions are duplicative.    Generally, Plaintiff addresses arguments that are unique to First Advantage starting on page 12 and continuing through the remainder of the opposition.

[2] After re-evaluating his First Cause of Action under 15 U.S.C. § 1681b, Plaintiff has decided to voluntarily dismiss his claim without prejudice.    Plaintiff may move to amend his First Amended Complaint if other putative class members later come forward with information showing that Esteem consumer reports are based in whole or in part on personal interviews and are therefore "investigative consumer reports" within the meaning of 15 U.S.C. § 1681a.

1    job opportunities for a period of seven years without ever suffering a criminal conviction, without

2    receiving due process of law, and without any opportunity to clear their names.

3         Such automatic disqualification from employment, based on unproven criminal

4    allegations, is precisely what certain California equal opportunity laws and regulations were

5    designed to protect against.  Specifically, both Labor Code § 432.7 and California Code of

6    Regulations, Title 2 § 11017(d)(1) ("2 C.C.R. § 11017") expressly prohibit employers from

7    seeking or using information concerning any arrests or detentions that did not result in criminal

8    conviction when making employment hiring decisions.  Esteem consumer reports fall squarely

9    within such prohibitions.

10        Under the FCRA, employers who seek consumer reports for employment purposes must

11   certify, among other things, that they will not use consumer reports in a manner that violates state

12   or federal equal employment opportunity law or regulation.  Consumer reporting agencies, like

13   Defendants, on the other hand, have a duty to make a reasonable effort to verify the uses certified

14   by the employer, prior to furnishing the employer with consumer reports. If they have reasonable

15   grounds for believing the reports will be used for a purpose that is not permitted or in violation of

16   the certification, then they must not provide the consumer report to the employer as requested.

17        Plaintiff alleges that because Esteem consumer reports *always* violate California equal

18   employment opportunity law and regulation, *i.e.* Labor Code § 432.7 and 2 C.C.R. § 11017,

19   Defendants have always been prohibited from sharing Esteem consumer reports with California

20   employers, regardless of any certifications they obtained. Plaintiff further alleges that such

21   violations were willful as Defendant knew, or was reckless in failing to know, that the provision

22   of Esteem consumer reports for use in the state of California violates California equal

23   employment opportunity law and regulation.  Plaintiff's allegations are well pled.

24        First Advantage now moves to dismiss Plaintiffs FAC on the grounds that California

25   employers are not prohibited from seeking and using information contained in Esteem consumer

26   reports and that First Advantage fulfilled its duties under the FCRA by relying on employers'

27   blanket certifications that Esteem consumer reports would not be used in violation of state or

28   federal equal employment opportunity law or regulation.  Additionally, First Advantage contends

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   that Plaintiff has failed to allege that First Advantage willfully violated the FCRA, and thus

2   Plaintiff and putative class members are not entitled to statutory damages under 15 U.S.C. §

3   1681n ("§ 1681n").

4       First Advantage's arguments are without merit.  As set forth below, Plaintiff has properly

5   pled a claim for relief on behalf of himself and the putative class based on First Advantage's

6   violations of the FCRA.  First Advantage's motion to dismiss should be denied in its entirety.

7   **II.   STATEMENT OF FACTS**

8       Plaintiff alleges that in 2010, he was accused by his employer, a big box retailer, of

9   committing refund fraud.  (Plaintiff's First Amended Complaint ("FAC") at ¶¶ 12-16.)  He was

10  taken to an office where he was detained for questioning by one of the retailer's loss prevention

11  officers and a district manager.  (FAC at ¶ 14.)   While in the office Plaintiff understood that he

12  was not free to leave and he was verbally informed that if he tried to leave, he would be placed in

13  handcuffs.  (FAC at ¶ 15.)

14      While Plaintiff was being detained in the store office, the loss prevention officer

15  completed an incident report with information related to his employer's allegations against

16  Plaintiff including the amount of money Plaintiff allegedly stole.  (FAC at ¶ 16.)   The loss

17  prevention officer further directed Plaintiff to prepare and sign an admission statement relating

18  the employer's allegations.  (FAC at ¶ 16.)    Plaintiff understood that if he did not cooperate by

19  preparing and signing the admission statement, he would be turned over to the police for arrest

20  and criminal prosecution.  (FAC at ¶ 16.)    Accordingly, Plaintiff drafted and signed a statement

21  admitting to the allegations.  (FAC at ¶ 16.)

22      Upon signing the supposed "admission" statement, Plaintiff was released from detention

23  and his employment was terminated.  Plaintiff was never criminally charged with, or convicted

24  of, the alleged "refund fraud" for which he was detained.  (FAC at ¶ 18.)

25      In June 2012, Plaintiff sought employment with Dollar General, another big box retailer,

26  as a store manager at one of Dollar General's retail store locations in California.  (FAC at ¶ 19.)

27  Plaintiff was offered a job with Dollar General pending the completion of a background check.

28  (FAC at ¶ 19.)  Thereafter, Plaintiff was informed that he had failed his background check on the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

basis of an "Esteem" consumer report from the "Esteem Retail Theft Contributory Database" (hereinafter referred to as the "Esteem Database"). (FAC at ¶ 20.) The Esteem consumer report contained information related to Plaintiff's October 2010 detention for alleged refund fraud, indicating that Plaintiff had provided his then employer with an "admission statement" related to the alleged refund fraud on October 5, 2010. (FAC at ¶ 20.) Because he failed the background check, Plaintiff was denied employment with Dollar General. (FAC at ¶ 21.)

First Advantage Background Services, Corp. ("Defendant" or "First Advantage") owns and operates the Esteem Database, having purchased it from co-defendant LexisNexis Risk Solutions, Inc. early in 2013. (FAC at ¶ 1.) The Esteem Database is billed as a "Retail Theft Contributory Database" because it is composed of numerous retailers' theft, fraud, and shoplifting detention records which have been contributed to build the database. (FAC at ¶ 30.) As owner and operator of the database, First Advantage actively seeks out these records from retailers for inclusion in the database. (FAC at ¶¶ 30-31.)

The internal theft and shoplifting detention records are composed of incident reports prepared at the time individuals are detained for suspected theft or shoplifting and are accompanied by either signed "admission statements" obtained during the detentions, as described above, or evidence of referral of the incidents for criminal legal action. (FAC at ¶ 31.) When a retailer requests an Esteem consumer report from First Advantage, First Advantage runs an inquiry into the Esteem database on the individual for whom a consumer report is sought. (FAC at ¶ 33.) If records related to the individual are included in the database, First Advantage prepares a consumer report based on the information that is akin to a rap sheet. (*Id.*) The consumer report contains identifying information for the individual, location details for the alleged act of theft, the type of offense that was supposedly committed, whether legal action was ever taken, the date of the supposed incident, and the dollar amount that was allegedly involved in the theft. (FAC at ¶ 33.)

Plaintiff has further alleged that as owner and operate of the Esteem database, First Advantage was well aware that Esteem records are based on, derived from, and concern detentions that did not result in criminal convictions. (FAC at ¶¶ 35-36, 40-41.) Indeed, Plaintiff

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    has alleged that some of the records contained in the database even make specific reference to

2    detentions made by the retailers. (FAC at ¶ 41.) First Advantage was also well aware of which

3    of these detentions resulted in criminal convictions, as the reports contain a line indicating

4    whether legal action relating to the detention was taken. (FAC at ¶ 35-36.) Finally, Plaintiff has

5    alleged that First Advantage was aware that Esteem consumer reports would be used by

6    employers, including employers in the state of California, to make employment hiring decisions.

7    (FAC at ¶ 42-43.) Indeed, the very purpose of the reports was, and still is, to allow employers to

8    make employment hiring decisions on the basis of each other's theft and shoplifting detention

9    records when such detentions never lead to prosecution or criminal conviction. (FAC at ¶ 43.)

10    Esteem consumer reports are extremely damaging to the individuals identified in the

11    reports. (FAC at ¶ 44.) Once an individual has been included in the Esteem Database, he will be

12    automatically disqualified from employment by every other participant in the database, which

13    includes most major retailers in the United States. (*Id*.) His Esteem consumer report will be

14    treated as conclusive proof, for a period of seven years, that he engaged in the alleged criminal

15    acts contained therein. (*Id*.) Thus, individuals identified in the Esteem Database who are not

16    experienced in other professions are deprived of their livelihoods by inclusion in the database

17    without ever suffering a criminal conviction for their alleged wrongdoing and without ever being

18    afforded the protections of due process of law. (*Id*.)

19    **III.    LEGAL STANDARD ON A MOTION TO DISMISS UNDER RULE 12(b)(6)**

20    A pleading must contain a "short and plain statement of the claim showing that the

21    pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Specific facts are not

22    necessary; the statement need only give the defendant fair notice of what the … claim is and the

23    grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). A Rule 12(b)(6)[3]

24    motion to dismiss "tests the legal sufficiency of a claim" alleged in the complaint. *Navarro v.

25    Block*, 250 F.3d 729, 731 (9th Cir.2001). A Fed. R. Civ. P., Rule 12(b)(6) dismissal is "proper

26    only where there is either a 'lack of a cognizable legal theory,' or 'the absence of sufficient facts

27    _____

28    [3] All Rule references are to the Federal Rules of Civil Procedure unless otherwise stated.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  alleged under a cognizable legal theory.'" *Cholakyan v. Mercedes-Benz USA, LLC*, 796

2  F.Supp.2d 1220, 1231 (C.D. Cal. 2011) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d

3  696, 699 (9th Cir.1988)).   The complaint is construed and all reasonable inferences are drawn in

4  favor of the plaintiff, and all properly pleaded factual allegations are taken as true.  *Coalition For*

5  *ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). "Generally, the

6  scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the

7  complaint."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).   A complaint is legally

8  sufficient when the plaintiff has alleged "enough facts to state a claim to relief that is plausible on

9  its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

10  **IV.**    **ARGUMENTS**

11       **A.**    **Plaintiff Has Properly Alleged a Violation of 15 U.S.C. § 1681e.**

12       "The FCRA was the product of congressional concern over abuses in the credit reporting

13  industry." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citing

14  *St. Paul Guardian Insurance Co. v. Johnson,* 884 F.2d 881, 883 (5th Cir.1989)). "The legislative

15  history of the FCRA reveals that it was crafted to protect consumers from the transmission of

16  inaccurate information about them … and to establish credit reporting practices that utilize

17  accurate, relevant, and current information in a confidential and responsible manner." *Id.* (Internal

18  citations omitted.)   These consumer oriented objectives support a liberal construction of the

19  FCRA.  *Id.*  (*citing Kates v. Croker National Bank,* 776 F.2d 1396, 1397 (9th Cir. 1985)).

20       In Plaintiff's Second Cause of Action, Plaintiff has alleged that First Advantage willfully

21  violated § 1681e of the FCRA.   § 1681e of the FCRA imposes a duty on consumer reporting

22  agencies to make a reasonable effort to verify the uses certified by prospective users of consumers

23  reports prior to furnishing the users with the reports.   Consumer reporting agencies are prohibited

24  from furnishing consumer reports if they have reasonable grounds for believing the reports will

25  be used for a purpose not permitted under 15 U.S.C. § 1681b ("§ 1681b").

26       § 1681b(a) of the FCRA provides that consumer reports can be provided to a person that a

27  consumer reporting agency has reason to believe intends to use the information for employment

28  purposes.   However, § 1681b(1)(A)(ii) further restricts the permissible purpose for which

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

consumer reports for employment purposes can be used, i.e. for employment purposes that are not violation of state or federal equal employment opportunity law.    Accordingly, reports for employment purposes can only be provided if the consumer reporting agency receives certification from the user that information from the consumer report will not be used in violation of any Federal or State equal employment opportunity law or regulation. *See* § 1681b(b)(1)(A)(ii).

In his FAC, Plaintiff has alleged that use of Esteem consumer reports in California ***always*** violates California equal employment opportunity law and regulation, specifically Labor Code § 432.7 and 2 C.C.R. § 11017.    As alleged in Plaintiff's FAC, the Esteem database has been designed, used, and advertised for the very purpose of denying employment to the very individuals that Labor Code § 432.7 and 2 C.C.R. § 11017 were designed to protect: individuals who have been detained for and accused of committing criminal acts but who have never suffered any criminal convictions relating to those acts.    Thus, regardless of any certifications that First Advantage may have received from users of Esteem consumer reports, First Advantage knew or was reckless in failing to know that their use of Esteem consumer reports in the state of California would violate state equal employment opportunity law.    Accordingly, Esteem consumer reports should never have been shared with California employers for use in California.

First Advantage challenges the adequacy of Plaintiff's allegations under § 1681e on essentially three ground's: first that California employers are not prohibited from seeking information contained Esteem consumer reports because detentions by retail merchants are not considered detentions within the meaning of California equal employment opportunity law or regulation; second that Esteem consumer reports do not report "detentions" within the meaning of California equal employment opportunity law; and third that First Advantage fulfilled its duties under the FCRA by relying on blanket certifications from employers. First Advantage's arguments are without merit.

        1.      **<u>California Employers are Prohibited from Seeking Esteem Consumer Reports Under State Equal Employment Opportunity Law and Regulation.</u>**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

a.    **Use of Information Concerning Any Arrests or Detentions for Employment Purposes is Prohibited under California Law.**

California law and regulation has long prohibited the use of information concerning *any* arrests or detentions that did not result in criminal convictions for the purpose of making employment determinations. *See* Labor Code § 432.7; 2 C.C.R. § 11017(d)(1)(A).  Specifically, Labor Code § 432.7 provides that:

> (a) No employer, whether a public agency or private individual or corporation, shall… ask an applicant for employment to disclose, through any written form or verbally, information concerning an ***arrest or detention that did not result in conviction***, or information concerning a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law, including, but not limited to, Sections 1203.4, 1203.4a, 1203.45,and 1210.1 of the Penal Code, nor shall any employer seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, ***any record of arrest or detention that did not result in conviction***, or any record regarding a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law, including, but not limited to, Sections 1203.4, 1203.4a, 1203.45, and 1210.1 of the Penal Code…

(Emphasis added.) 2 C.C.R. § 11017(d), promulgated by the Fair Employment and Housing Council under the California Fair Employment and Housing Act, similarly provides that:

> (d) Specific Practices.

> (1) Criminal Records. Except as otherwise provided by law (e.g., 12 U.S.C. § 1829; Labor Code section 432.7)***, it is unlawful for an employer or other covered entity to inquire or seek information regarding any applicant concerning:***

> ***(A) Any arrest or detention that did not result in conviction***;

 (Emphasis added.)

These laws and regulations prohibiting the use of arrest or detention records, where no conviction resulted, hold inviolate "the fundamental presumption of a suspect's innocence prior to the contrary being proved at trial." *Corona v. Target Corporation*, 2010 WL 3221866 at *2 (N.D. Cal., Aug. 13, 2010) (evaluating a claim under Labor Code §432.7 and citing *Pittman v. City of Oakland*, 197 Cal.App.3d 1037, 1044 (1988)).  As explained in *Pittman v. City of Oakland* "the obvious intent of [Labor Code § 432.7] is to prevent the adverse impact on employment

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1  opportunities of information concerning arrest where culpability cannot be proved."  Likewise,

2  the prohibition on the use of arrest or detention records, found in 2 C.C.R. § 11017(d), recognizes

3  that the use of non-conviction criminal history information for the purpose of making

4  employment hiring decisions has an unfair and adverse discriminatory impact on job applicants.[4]

5  Accordingly, the use of any information concerning such arrests or detentions is categorically

6  prohibited, protecting all California job applicants equally from the injurious impact of such

7  information.

8        The importance of the prohibitions found in Labor Code § 432.7 and 2 C.C.R. § 11017(d)

9  on the use of non-conviction information for employment purposes cannot be over-stated.  State

10  and federal courts have recognized that "[t]he right to work and the concomitant opportunity to

11  achieve economic security and stability are essential to the pursuit of life, liberty and happiness."

12  *Kerrigan v. Fair Employment Practice Com.*, 91 Cal. App. 3d 43, 50-51 (1979).  "Gainful

13  employment is central to the individual's role as a productive member of society, to his ability and

14  to provide for his family and himself, and to his psychological need for self-esteem and respect."

15  *Id.*  On the other hand, criminal allegations without proof in a court of law are of little probative

16  value.  As one federal court has explained:

17        [t]he mere fact that a man has been arrested has very little, if any, probative value
       in showing that he has engaged in any misconduct.  As arrest shows nothing more
18     than that someone probably suspected the person apprehended of any offense.
       When formal charges are not filed against the arrested person and he is released
19     without trial, whatever probative force the arrest may have had is normally
       dissipated… Actually, a collection of dismissed, abandoned, or withdrawn arrest
20     records are not more than gutter rumors when measured against any standards of
       constitutional fairness…
21

22  *Utz v. Cullinane,* 520 F.2d 467, 478-479 (D.C. Cir. 1975).  Nevertheless, employers will make

23  "automatic disqualification" of potential employees based on arrest or detention records and

24  "cannot or will not distinguish between arrests resulting in conviction and arrests which do not"

25  when they have the ability to do so.  *Central Valley Chap. 7th Step Foundation v. Younger*, 95

26  Cal. App. 3d 212, 231 (1979) (citing *Utz*, 520 F.2d at 480.)

27  _____

28  [4] *See* 2 C.C.R. § 11014; Government Code §12920.

Both Labor Code § 432.7 and 2 C.C.R. § 11017 are remedial in nature and are designed to protect California employees. Both should accordingly be construed liberally in favor of their protective purposes. *See Indus. Welfare Com. v. Superior Court*, 27 Cal. 3d 690, 702-03 (1980) ("[r]emedial statutes… are to be liberally construed. (Citation.) They are not construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished. . . ."); *see also Vernon v. State*, 116 Cal. App.4th 114 (2004) (citing *Kelly v. Methodist Hospital of So. California*, 22 Cal. 4th 1108, 1114 (2000) ("'[b]ecause the FEHA is remedial legislation, which declares "[t]he opportunity to seek, obtain and hold employment without discrimination" to be a civil right (§ 12921), and expresses a legislative policy that it is necessary to protect and safeguard that right (§ 12920), the court must construe the FEHA broadly, not … restrictively.'") In keeping with the mandate of construing remedial statues and regulations broadly, one court in this district has already found that Labor Code § 432.7 reflects a "broad[] public policy against allowing an employer to fire an employee based in whole or in part on the fact an employee has been suspected of a crime, absent a conviction for that crime." *Brahmana v. Lembo*, 2011 WL 1674993, at *7 (N.D. Cal. May 4, 2011). In doing so, the Court found that an employment decision could not be made based on a report indicating the plaintiff was under investigation for perjury. *Id.*

### b. Retail Merchants are Empowered to Arrest or Detain Under California Law.

California law has also long empowered retail merchants and their store loss prevention personnel to arrest or detain employees or other persons pursuant to Penal Code §§ 490.5 and 837. *People v. Zelinski*, 24 Cal.3d 357, 362-363, 366 (1979) ("We have recognized that private security personnel, like police, have the authority to detain suspects, conduct investigations, and make arrests")*; People v. Crowder*, 136 Cal.App.3d 841, 471 (1982) ("…security employees can arrest or detain an offender…"). As with detentions by law enforcement personnel, such arrests and detentions must be supported by probable cause. *Id.* The purposes and bases for which a merchant and its loss prevention officers can detain or arrest someone, and the conduct they can engage in in doing so, however are limited. *See* Penal Code §§ 490.5, 837; *People v. Crowder*,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

136 Cal. App. 3d. 841, 844 (1982). Their privilege to detain upon probable cause is primarily to allow them to engage in the purely self-interested function of protecting their employer's property. *Zelinski*, 24 Cal.3d at 367. They can also detain or arrest someone whom they have reasonable cause to believe committed a felony or when a felony has been committed in their presence. *Zelinski*, 24 Cal.3d at 362; Penal Code § 837. The failure of a merchant to comply with the statutory limitations does not change the essential nature of an arrest or detention into something other than an arrest or detention, it simply renders the detention or arrest illegal. *See, e.g. Moffat v. Buffums' Inc.*, 21 Cal. App. 2d 371, 374-375 (1937)(finding the plaintiff was detained, but the merchant right to protect property did not allow detention for the purpose of securing a confession); *Cervantez v. J.C. Penny Co.*, 24 Cal.3d 579 (1979).

> **c.     Employers' Use of Esteem Consumer Reports Violates California Law.**

Against this backdrop of California law, Plaintiff has alleged that he and other individuals have been detained by retailers for the purpose of the retailer's investigations and accusations of criminal theft. (FAC at ¶¶ 30-31.)    At the time they are detained, the retailers use their detentions not purely for the purpose of protecting their own property, but also to secure supposed written admission statements for the alleged criminal acts. (FAC at ¶ 31.) The admission statements do not constitute adjudications of guilt. Indeed an admission or confession alone is never considered sufficient proof of criminal conduct for a conviction in the state of California and Plaintiff has alleged that some of the supposed admissions may be involuntary, coerced, or otherwise inadmissible for use in court. (FAC at ¶ 27); *see also* California Jury Instruction - Criminal No. 2.72 (providing that: "[n]o person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any [confession] [or] [admission] made by [him] [her] outside of [] trial").

First Advantage nevertheless has operated a system to make large scale inquiries into these admission statements and incident reports that accompany the admissions, which are also prepared by the retailers' loss prevention officers at the time of each individuals' detention. (FAC at ¶¶ 30-31.)    The incident reports contain details and information related to the detention,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1   including the alleged criminal reason for the detention and the alleged theft amount.  (*Id.*)    First

2   Advantage takes the information from the admissions and incident reports and includes the

3   information in its Esteem Database.  (FAC at ¶ 32-33.)

4       First Advantage then uses the information obtained from the retailers to prepare consumer

5   reports for other retailers who are considering hiring the subject of the information for

6   employment.  (FAC at ¶¶ 33.)  As a result of their information being included in an Esteem

7   consumer report, the subject of the report is automatically disqualified from employment by the

8   retailer who seeks and uses the consumer report.  (FAC at ¶ 44.)

9       Use of the detention information contained in Esteem consumer reports for employment

10   hiring purposes in the state of California violates both the plain language and the intent of Labor

11   Code § 432.7 and 2 C.C.R. § 11017, as set forth above.  Both were designed to prevent the

12   automatic disqualification of potential employees based on information concerning arrests or

13   detentions that never resulted in criminal convictions.  Esteem consumer reports are used for

14   exactly such purpose: to automatically deny employment to individuals based on information

15   concerning their detentions that never resulted in criminal convictions.    Thus, California

16   employers are prohibited from using Esteem consumer reports.

17       Likewise, under § 1681e, First Advantage had a duty to verify the uses certified by

18   prospective users of consumers reports prior to furnishing the users with the reports.  In light of

19   the fact that use of Esteem consumer reports in California ***always*** violates California equal

20   employment opportunity law and regulation, First Advantage was prohibited from sharing Esteem

21   consumer reports with employer for use in California, regardless of any certifications stating the

22   reports would not be used impermissibly.  *See* Section A.4., below.

> **2.    First Advantage's Argument that Merchant Detentions are Not Detentions under Labor Code § 432.7 and 2 C.C.R. § 11017 is Meritless.**

23

24

25       Despite the fact that Esteem consumer reports fall directly within the plain language and

26   intent of Labor Code § 432.7 and 2 C.C.R. § 11017, First Advantage contends that the Labor

27   Code § 432.7 and 2 C.C.R. § 11017 apply only to arrests and detentions by law enforcement

28

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    officers because "only the state can engage in arrest, detention and conviction."  Defendant is

2    plainly wrong.

3         Under California law, retail store loss prevention personnel can detain an individual

4    pursuant to Penal Code 490.5 and can arrest an individual pursuant to Penal Code § 837.

5    *Zelinski*, 24 Cal.3d at 362-363.  While it is true that only police can convict an individual,

6    individuals can plainly be convicted for the acts for which they can be arrested or detained.

7    Indeed, First Advantage, and the prior owner of the Esteem Database, LexisNexis Risk Solutions,

8    Inc. have referred to the Esteem database as a "Retail ***Theft*** Contributory Database;" the Esteem

9    consumer reports provide a supposed "***Theft*** Amount;"  they have a line for "Type of Offense" –

10   in Plaintiff's case the stated offense is "Refund ***Fraud***;"  and LexisNexis has advertised the

11   Esteem database by claiming that "[*s*]*ince many internal theft incidents are not prosecuted*,

12   LexisNexis Retail Theft Contributory Database provides [] organization[s] with access to

13   proprietary ***theft and fraud data*** that may not be available anywhere else."  Plainly First

14   Advantage and LexisNexis have attempted to convey to retailers that information contained in the

15   Esteem Database relates to crimes for which individuals could have been convicted.

16        Moreover, the plain language of both Labor Code § 432.7(a) and 2 C.C.R. § 11017 does

17   not distinguish between arrests or detentions committed by police officers and criminal arrest and

18   detentions by other actors such as store security or loss prevention officers. Indeed, 2 C.C.R. §

19   11017 expressly relates to ***any*** arrest or detention that did not result in a criminal conviction.

20   Likewise, the words "arrest" and "detention" do not exclude private actors such as store loss

21   prevention officers.  To the contrary, the California Penal Code specifically defines the word

22   "arrest" to specifically include arrests made by either "a peace officer or a private person."  *See*

23   Cal. Penal Code § 834. Likewise, a "detention" is merely the "act or fact of holding a person in

24   custody; confinement or compulsory delay."  *See* Blacks Law Dictionary, Ninth Edition.

25        Nor should any distinction be made between arrests and detentions by store loss

26   prevention personnel and arrests or detentions by police officers.  The clear intent of both Labor

27   Code § 432.7 and 2 C.C.R. § 11017 is to prevent use of mere criminal allegations to deny

28   individuals employment when such allegations have never been proven in a court of law. *See*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

*Brahmana*, 2011 WL 1674993, at *7. Arrests and detentions by loss prevention personnel are no more conclusive of supposed guilt for an alleged crime than arrests or detentions by police officers. Yet First Advantage and the users of the Esteem database treat the records in the Esteem Database as conclusive evidence of guilt for the purpose of denying individuals employment. Thus these "unofficial" records carry the exact same stigma as "official" records.

The fact that existing case law has referred only to "official" police records, as First Advantage contends, is not surprising. While police departments have long maintained records of arrests and detentions that did not result in convictions, large databases of unofficial records like the Esteem Database have only recently become feasible to create and maintain. Moreover, databases like the Esteem Database are plainly a response to employers' inability to obtain and use official arrest records. Yet they serve the exact same purpose: ***automatic disqualification from employment based on unproven criminal allegations.***

### 3.    Esteem Reports Provide Information Concerning Detentions.

First Advantage also contends that Plaintiff's Esteem report did not "report[] a detention of any kind." (First Advantage MTD at 9:8-11:7.) In essence, First Advantage's argument is that the Esteem report must use the specific words "arrest" or "detention" in order to be considered "information regarding any applicant concerning… [a]ny arrest or detention that did not result in conviction" (2 C.C.R. § 11017) or "any record of arrest or detention that did not result in conviction." (Labor Code § 432.7) Defendant's argument is absurd.

Plaintiff has alleged that his supposed admission statement was written at a store loss prevention officer's direction while he was being detained in an office with the loss prevention officer and a district manager. (FAC at ¶¶ 15-16.) The incident report was prepared at the same time. (*Id.*) These records served as the basis for the Esteem consumer report that was provided to Dollar General and used to deny Plaintiff employment. (FAC at ¶¶ 20, 33.) By virtue of the fact that they are both records from Plaintiff's detention, they plainly concern the detention. *See, e.g. Westcott v. Yuba County*, 104 Cal.App.3d 103, 106-107 (1980), citing *T.N.G. v. Superior Court*, 4 Cal.3d 767 (1971) (incident reports and police reports involving suspected criminal actions for

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

which juveniles were detained are considered "detention records" within the meaning of record sealing statute);

Moreover, Plaintiff has alleged, as First Advantage concedes, "the Esteem consumer report contained information related to plaintiff's October 2010 detention." (First Advantage MTD at 10:1-3.) Under § 11017, inquiring or seeking information **concerning** arrests or detentions that did not result in convictions is prohibited. "Concerning" is a broad term meaning "relating to." *See Schering Corp. v. First Databank, Inc.,* 479 F. Supp. 2d 468, 471 (D.N.J. 2007) citing Black's Law Dictionary, Sixth Edition. Thus, Plaintiff has sufficiently alleged that the Esteem consumer report "concerned" his detention. At the very least, the question of whether the Esteem consumer report concerned his detention is a question of fact that cannot be decided on a motion to dismiss.

### 4.    Blanket Certifications from Employers Do Not Relieve First Advantage from Liability Under § 1681e.

Aside from the question of whether use of Esteem consumer reports in the state of California constitutes a violation of state equal employment opportunity law or regulation, First Advantage relies on *Washington v. CSC Credit Servs. Inc.,* 199 F.3d 263, 267 (5th Cir. 2000) to argue that in order to state a claim for violation of § 1681e, Plaintiff must first show that either First Advantage violated § 1681b(a) or that it completely failed to obtain a certification under § 1681b(b)(1)(A). (First Advantage MTD at 12:21-13:24.) First Advantage further relies on *Washington* and *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982) to argue that a blanket certification made to its predecessor in ownership, ChoicePoint - who owned the Esteem database even before co-Defendant LexisNexis, supposedly obtained in 2007, fulfilled its obligations under § 1681b(b)(1)(A) and § 1681e of the FCRA. (*Id.* at 13:2-16:16.)

The Ninth Circuit has never followed or even cited *Washington* and First Advantage fails to cite any relevant Ninth Circuit authority that stands for the propositions for which First Advantage cites *Washington*. To the contrary, the Ninth Circuit has held that consumer reporting agencies cannot absolve themselves from liability under § 1681e by simply obtaining and pointing to blanket certifications from consumer report users under § 1681b(b)(1)(A), as First

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   Advantage's rule would suggest. *See Pintos v. Pacific Creditors Association*, 605 F.3d 665, 676-

2   677 (2009).  As the Court in *Pintos* explained:

3       A credit reporting agency may be liable for its subscriber's violation when the
        agency fails to comply with the statutory obligations imposed by 15 U.S.C. §

4       1681e. *See Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th
        Cir.1995) …Section 1681e requires more from a credit reporting agency than

5       merely obtaining a subscriber's general promise to obey the law. After prospective
        subscribers "certify the purposes for which [credit] information is sought, and

6       certify that the information will be used for no other purpose," the reporting
        agency must make "a reasonable effort" to verify the certifications and may not

7       furnish reports if "reasonable grounds" exist to believe that reports will be used
        impermissibly. 15 U.S.C. § 1681e(a). Under the plain terms of § 1681e(a), a

8       subscriber's certification cannot absolve the reporting agency of its independent
        obligation to verify the certification and determine that no reasonable grounds

9       exist for suspecting impermissible use. Blanket certification cannot eliminate all
        genuine issues of material fact with regard to [] liability.

10

11      *Pintos*, 605 F.3d at 677.

12      Moreover, the *Pintos* decision expressly rejects the proposition for which First Advantage

13  quotes and cites *Boothe*, stating:

14      Experian suggests that *Davis v. Asset Servs.,* 46 F.Supp.2d 503, 508

15      (M.D.La.1998), *Boothe v. TRW Credit Data*, 557 F.Supp. 66, 71 (S.D.N.Y.1982),
        and *Hiemstra v. TRW, Inc.,* 195 Cal.App.3d 1629, 1634, 241 Cal.Rptr. 564

16      (Cal.Ct.App.1987) support the contention that blanket certifications will satisfy a
        credit reporting agency's obligations under § 1681e(a). While these cases hold that

17      credit reporting agencies may rely on blanket certifications rather than having to
        verify credit requests individually, none provides that a blanket certification by

18      itself is sufficient to satisfy the § 1681e inquiry. *See, e.g., Davis,* 46 F.Supp.2d at
        508 (holding that the defendant complied with the requirements of § 1681e(a)

19      because it obtained a blanket certification *and* because the plaintiff did not submit
        "any evidence to prove that the [defendant] knew or should have had reason to

20      know that [the subscriber] would access the report for an impermissible purpose");
        *Boothe,* 557 F.Supp. at 71 (finding no violation where the primary business of the

21      requesting entity used reports for a permissible purpose and there was "no showing
        that TRW knew of the improper purpose for the report issued"). Even if Experian

22      did not have to verify PCA's request for Pintos's credit report individually, §
        1681e(a) still required proper verification of PCA generally.

23

24

25  *Pintos,* 605 F.3d at 677 n.3.  Thus neither *Washington* nor *Boothe* accurately depict FCRA law in

26  the Ninth Circuit and First Advantage's arguments predicated on *Washington and Boothe* should

27  be rejected.

28      Here, Plaintiff has alleged that First Advantage had reasonable grounds for believing that

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1   Esteem consumer reports would be used impermissibly by employers in the state of California.

2   (FAC at ¶ 91.)  Plaintiff has alleged that the *only* use for Esteem consumer reports is for the

3   purpose of making employment hiring decisions.  (FAC at ¶ 43-91.)  Plaintiff has further alleged

4   that *the use of all* such reports for the purpose of making employment hiring decisions, in the

5   state of California, violates state equal employment opportunity laws and regulations.  (FAC at ¶

6   85-89.)  Thus their use is never permissible in the state of California.  (FAC at ¶ 85-91.)  Plaintiff

7   has further alleged that First Advantage knew, or was reckless in failing to know, that the use of

8   Esteem consumer reports in California violates state equal employment opportunity laws and

9   regulations. (FAC at ¶ 91.)  Thus, First Advantage had reasonable grounds for believing that

10  employers in the state of California would impermissibly use Esteem consumer reports in

11  violation state equal employment opportunity laws and regulations and in violation of their

12  certifications under § 1681b(b)(1)(A).  (FAC at ¶ 91.)   Indeed, it would be absurd to conclude

13  that First Advantage could provide reports under the FCRA to California employers that always

14  violate California equal employment opportunity law or regulation based on the employer making

15  a blanket certification that it will not violate state equal employment opportunity law.  These

16  allegations for violation of § 1681e plainly fall within the duties enunciated in *Pintos* and are

17  therefore actionable.

18      Apparently recognizing the sufficiency of Plaintiff's allegations, First Advantage further

19  attempts to introduce new "facts" that are not contained anywhere in Plaintiff's FAC.  First

20  Advantage contends that Dollar General, who denied Plaintiff employment based on an Esteem

21  consumer report, is not primarily a California employer; that Dollar General requested the Esteem

22  consumer report on Plaintiff from the state of Tennessee and it was sent to the state of Tennessee;

23  and that First Advantage did not "necessarily" have any reason to believe the report was being

24  furnished related to employment in the state of California.  (First Advantage MTD at 15:11-

25  16:16.)  None of this information is alleged in Plaintiff's FAC nor can it even be determined from

26  the two documents that First Advantage seeks judicial notice of.  To the extent some of these

27  claims may appear in the declaration submitted by First Advantage in support of its motion to

28  dismiss, it would be improper for the Court to give the declaration consideration on a motion to

dismiss. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) (declining consideration of facts outside of the complaint and contained in declarations on a motion to dismiss). Moreover, the very first page of the report provides an "IMPORTANT NOTICE UNDER CALIFORNIA LAW" and the report itself contains Plaintiff's address, which has been redacted but would have given First Advantage an indication of where Plaintiff was likely looking for employment. Both of these facts contradict First Advantage's argument that it or its predecessor did not know the report would be used in the state of California. Regardless, the argument is clearly an issue of disputed fact not raised in Plaintiff's FAC and is improper for consideration at this stage in the litigation.

### B.    Plaintiff Has Alleged Willful Conduct on the Part of First Advantage.

First Advantage additionally argues that Plaintiff has failed to allege facts in his FAC sufficient to support his claim under § 1681n that First Advantage willfully violated the FCRA. Plaintiff must prove that First Advantage's violation of the FCRA was willful in order to recover statutory damages.

A "willful" violation under the FCRA includes "not only knowing violations of a standard, but reckless ones as well." *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). A defendant acts in reckless disregard if the defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id.* at 69. Under the FCRA, willfulness is generally an issue of fact for the jury.   At the pleading stage, Rule 8 of the Federal Rules of Civil Procedure requires only that "each averment of a pleading [be] simple, concise and direct." Fed.R.Civ.P. 8. Additionally, Rule 9 states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). As a result, allegations regarding state of mind, such as willfulness, may be averred generally. Moreover, in the FCRA's context, the Ninth Circuit has held that a plaintiff need only show that it was plausible that the defendant acted in reckless disregard of a statutory duty. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 411 n. 1 (9th Cir. 2014).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Here, Plaintiff has alleged more than sufficient facts to establish that First Advantage willfully violated the FCRA.  Plaintiff has alleged that First Advantage intentionally owned and operated a database intended to be used for the purpose of denying employment to individuals, including individuals in the state of California.  (FAC at ¶¶ 1-2, 43-44.)  Plaintiff has further alleged that the database disqualifies persons from employment whom the laws of California were designed to protect: persons who suffered detentions for alleged criminal acts but have never been convicted of such acts.  (FAC at ¶¶ 44, 66-70, 75, 88, 90-91.)  Plaintiff has alleged that First Advantage knew that information contained in Esteem consumer reports was obtained from detentions for alleged criminal violations and that the detentions do not constitute actual adjudications of guilt.  (FAC at ¶ 35-36.)    Indeed, Plaintiff has alleged that the prior owner of the Esteem Database, LexisNexis, promoted the fact that the Esteem Database provides information about supposed criminal acts by persons who have never suffered any criminal convictions by directly advertising that "*[s]ince many internal theft incidents are not prosecuted*, LexisNexis Retail Theft Contributory Database provides [] organization[s] with access to proprietary *theft and fraud data* that may not be available anywhere else." (FAC at ¶¶ 36-40.)  Plaintiff has also alleged that First Advantage was aware that Esteem database members use Esteem consumer reports for the purpose of making employment hiring decisions and automatically denying Californians employment.  (FAC at ¶¶ 43-44.) Finally, Plaintiff has alleged that First Advantage was prohibited from inquiring into such information for the purpose of preparing Esteem consumer reports and that it knew or was reckless in failing to know California employers would use Esteem consumer reports in a manner that violates California equal employment opportunity laws or regulations. (FAC at ¶ 70, 71, 91.)   Therefore it was impermissible for First Advantage to provide Esteem reports to California employers, regardless of any certifications such employers made under the FCRA.  (FAC at ¶ 91.)

Based on the language, intent, and purpose of Labor Code § 432.7 and 2 C.C.R. § 11017 as set forth above, it was also objectively unreasonable for First Advantage to provide Esteem consumer reports to employers for use in California.  Using non-conviction criminal detention records for the purpose of denying Californians employment has been disfavored and prohibited

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    since the 1970s. Plainly the Esteem database was designed to provide employers with private

2    versions of the exact same documents that case law had already established were prohibited from

3    use in making employment decisions.  Likewise, Esteem consumer reports were designed to carry

4    the exact same stigma that the laws were designed to protect against: the stigma of being a

5    criminal when no criminal allegations have been proven in a court of law.  Maintaining and using

6    a database with the clear intent of defeating these important employee protections plainly ran a

7    risk of violating the law that was substantially greater than taking actions that were merely

8    careless.

9        In short, First Advantage had every reason to know that employers who use Esteem

10   consumer reports in California were engaging in conduct prohibited by California equal

11   employment opportunity law and regulation. Accordingly, Plaintiff has sufficiently alleged that

12   First Advantage acted with reckless disregard of its statutory duties under the FCRA.

13   **V.      CONCLUSION**

14       As set forth in Plaintiff's First Amended Complaint and as set forth above, First

15   Advantage operated the Esteem database for the very purpose of denying individuals, including

16   Californians, employment on the basis of unsubstantiated criminal allegations that have never

17   been proven at trial.  First Advantage knew, or was reckless in failing to know, that the use of

18   Esteem consumer reports in the state of California violates California equal employment

19   opportunity law and regulation.  Accordingly, should never have been shared with employers for

20   use in the state of California.  First Advantage's motion to dismiss should be denied and First

21   Advantage should be held to answer Plaintiff's First Amended Complaint.   If the Court is

22   inclined to grant any part of the motion to dismiss, Plaintiff requests leave to amend the

23   Complaint to address any deficiencies the Court finds.

24   Dated:  June 30, 2014              **KELLER GROVER LLP**

25

26                                      By:  /s/ *Carey G. Been*
                                            CAREY G. BEEN
27                                          *Counsel for Plaintiff*
                                            G. TSANG, individually and on behalf of
28                                          classes of similarly situated individuals

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861